**CIV  94   892**

LORENZO F. GARCIA
U.S. MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| CARL WILSON, an individual, and AUDREE WILSON, an individual, | ) ) ) | Case No. |
| | ) | COMPLAINT FOR LIBEL |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| HARPERCOLLINS PUBLISHERS, INC., a Delaware corporation, and EUGENE LANDY, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

COME NOW PLAINTIFFS CARL WILSON AND AUDREE WILSON who allege as follows:

## FACTS COMMON TO ALL ALLEGATIONS

1.   Plaintiff Carl Wilson ("Carl") is and, at all times herein mentioned, was an individual residing in the State of Colorado.

2.   Plaintiff Audree Wilson ("Audree") is and, at all times herein mentioned, was an individual residing in the County of Los Angeles, State of California.

3.    Plaintiffs are informed and believe and thereupon allege that defendant HarperCollins Publishers, Inc. ("HarperCollins") is a corporation duly organized and existing under the laws of the State of Delaware with principal business offices in New York City.

4.    Plaintiffs are informed and believe and thereupon allege that defendant Eugene Landy ("Landy") is an individual residing in the State of New York.

5.    The tortious acts complained of herein were committed, in part, in the State of New Mexico, and plaintiffs sustained injury in said state as a consequence of said tortious acts.

6.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332(a) which confers the subject matter jurisdiction on the United States District Court in all cases in which there is a diversity of citizenship and the amount in controversy exceeds the sum of $50,000, excluding interest and costs.

7.    Venue is proper pursuant to 28 U.S.C. section 1391(a) and (c).

8.    Plaintiffs are informed and believe and thereupon allege that, at all relevant times, each of the defendants was acting as agent and/or employee of the other defendant, or in some manner controlled the actions of the other defendants, and in doing the things alleged herein was acting within the course and scope of such agency and/or employment.  Plaintiffs further allege that, at all times herein mentioned, each of the defendants was acting with the permission and consent of the

-2-

1  other defendant and/or ratified the actions of the other

2  defendant.

3      9.   Within the three (3) years of the filing of this

4  Complaint, defendants Landy and HarperCollins caused to be

5  written, printed, published and disseminated to the general

6  public, including the public throughout the State of New Mexico,

7  a book entitled Wouldn't It Be Nice (the "Book").  The Book was

8  purportedly written by Brian Wilson with Todd Gold.

9      10.  Plaintiffs are informed and believe and thereupon

10  allege that Landy collaborated extensively in the authorship of

11  the Book, and in doing so, altered and manipulated sources.

12                  **FIRST CLAIM FOR RELIEF**

13                **(Libel Against Both Defendants)**

14      11.  Plaintiff Audree Wilson hereby repeats and realleges

15  paragraphs 1 through 10 hereinabove and incorporate said

16  paragraphs herein by reference as though set forth at length.

17      12.  The Book contained the following statements of and

18  concerning Audree that are false and defamatory:

19          "I suppose my mother drank to ease her pain;"

20  Book, p. 17.

21          "My mom had been drinking.  She looked

22          helpless and frightened, more frightened than

23          I was."

24  Book, p. 18.

25          "My mother was no help.  She almost never

26          opposed my father, almost never rose up and

27          defended her children. . . .  Who knows?  She

28          might've been abused herself.  I often saw

-3-

v:\wil3\004\complaint.2

1            her pour a drink in the afternoon and

2            continue sipping throughout the evening.  She

3            was passive and aloof by the time my dad came

4            home, a bystander who refused to intercede in

5            the flagrant child abuse going on in front of

6            her."

7  Book, p. 27.

8            "She once looked on as he tied me to a tree

9            for punishment.  Another time, while the rest

10           of the family was eating dinner, my dad

11           barged into my room and caught me

12           masturbating. . . .  Not hiding his disgust,

13           he shouted to my mom 'the boy's not to have

14           dinner for two nights.'  My mom complied.

15           She sipped nervously and anxiously at her gin

16           and tonic."

17 Book, p. 27.

18           "[My father] stalked off, irate, muttering

19           threats under his breath, and continuing his

20           tirade in another room.  My mother listened

21           passively, as always, refusing to take either

22           side in the matter."

23 Book, p. 48.

24     13.  These and other statements in the Book are defamatory

25 per se in that they falsely portray Audree as an alcoholic, an

26 unfit mother and as an individual so emotionally demoralized that

27 she was incapable of defending herself or her children against

28 severe abuse.  Said statements expose Audree to contempt,

-4-

ridicule and obloquy, and have a tendency to injure her in her vocation.

14.  At the time defendants made said statements, they knew that said statements would expose Audree to contempt, ridicule and obloquy, and would have a tendency to injure her in her vocation.

15.  Plaintiff Audree Wilson is informed and believes and thereupon alleges that defendants made the defamatory statements alleged hereinabove with actual malice (also known as constitutional malice), in that said defamatory statements were made with knowledge that they were false or with reckless disregard for their truth or falsity.  Said plaintiff further alleges that defendants knew that they had no reasonable basis in fact to make said statements and that they had no reliable and unbiased information with which to support said statements. Plaintiffs further allege that defendants failed to properly determine the truth or falsity of said statements prior to publication.

16.  Plaintiff Audree Wilson is informed and believes and thereupon alleges that defendants were negligent in making the defamatory statements alleged hereinabove, in that said statements were made without the exercise of ordinary and reasonable care as to the truth or falsity of the statements.

17.  Defendants caused the Book to be distributed throughout the United States.  The Book was widely sold in the State of New Mexico.  Accordingly, the above-enumerated defamatory statements were seen and read by persons who reside in the State of New Mexico.  Defendants knew, or should have known, that said

-5-

1  defamatory statements would be read by individuals who reside in
2  said county and state.

3      18.   As a direct and proximate result of the publication of
4  said defamatory statements, Audree has suffered damage to her
5  reputation, shame, mortification, and emotional distress, all to
6  her general damage in the amount of Five Million Dollars
7  ($5,000,000).

8      19.   Defendants' conduct was intentional and was done
9  maliciously, with ill will towards Audree and in conscious
10 disregard for her rights.  As a result, Audree is entitled to
11 punitive damages in an amount to be proven at trial.

12

13                    **SECOND CLAIM FOR RELIEF**

14               **(For Libel Against All Defendants)**

15     20.   Plaintiff Carl Wilson hereby repeats and realleges
16 paragraphs 1 through 10 hereinabove and incorporate said
17 paragraphs herein by reference as though set forth at length.

18     21.   The Book contained the following false and defamatory
19 statements of and concerning Carl:

20          "One night, Dennis, Carl, and I were
21          drunkenly walking through the redlight
22          district in Amsterdam, heading for a
23          restaurant while Dennis tried talking me into
24          sampling one of the local girls." . . . "The
25          piano bench was knocked over, punches were
26          exchanged and before I knew it Carl and
27          Dennis were dragging me out the front door
28          and hustling me back to the hotel."  . . .

-6-

v:\wil3\004\complaint.2

1    "After downing a few, Dennis, Carl, and Mike

2    hit the dancefloor."

3

4    "Dennis smuggled heroin into New Zealand

5    . . . Carl, trying to calm the turbulence by

6    admitting his involvement in the purchase of

7    the heroin, ended up getting punched in the

8    face by Rocky."

9    Book, p. 252.

10    "Within a week Carl was in Dr. Landy's

11    office, asking how much the treatment would

12    cost." . . . "Dr. Landy explained himself

13    clearly, knowing Carl was going to take the

14    information he got from the meeting and tell

15    Marilyn, who had helped him through the

16    dissolution of his marriage and now was

17    providing him comfort in dealing with me."

18    . . . "Carl never liked Dr. Landy's bluntness

19    and was scared of him." . . . "Carl and Al

20    complained Dr. Landy's fees were outrageous."

21    . . . "Predictably, the first thing they

22    wanted to discuss wasn't my health, it was

23    Dr. Landy's fee."

24    Book, pp. 273-275.

25    "I don't care if he ever sings, plays again,

26    or makes one more note of music,' said Carl."

27    Book, p. 276.

28    ". . . Several weeks before Christmas 1983,

-7-

1    Carl and his manager, Jerry Schilling,

2    approached Dr. Landy about treating Dennis."

3    . . . "The next day, Schilling called Landy

4    and told him Carl needed longer to make up

5    his mind.  The price was steep, too steep, he

6    thought for the Beachboys to carry."  "Beyond

7    that, Carl didn't want to upset his family's

8    holiday plans by having, as Dr. Landy

9    suggested, an intervention in Lake Arrowhead.

10   Carl suggested talking after the holidays."

11   . . . "Carl was adamant, though; he didn't

12   want to deal with the problem until after New

13   Year."

14   Book, pp. 311-312.

15   "Carl didn't know what to do.  Before making

16   any decisions, he insisted on consulting with

17   John Rogers, a cult leader Carl referred to

18   as his spiritual master."

19   Book, p. 314.

20   "In early 1986, Carl threw his weight into

21   the war against Dr. Landy." . . . "But the

22   Beachboys loathed the independence Dr. Landy

23   was giving me.  They hated that I was

24   beginning to be able to say no to them and

25   act on my own thoughts.  They resented that I

26   wrote songs, not with Dr. Landy, but without

27   them. . . .

28   "The struggle escalated when Carl began

-8-

1                withholding my paychecks and money.  That

2                authority was his through the Brian Wilson

3                Trust of 1982, which he had me sign prior to

4                Dr. Landy's beginning treatment again . . ."

5 Book, p. 332.

6                "In Carl's opinion, the trust was supposed to

7                protect me from Dr. Landy, but as I got

8                saner, I began questioning my brother.  I

9                couldn't remember signing the document in the

10                first place.  I was too incompetent at the

11                time to know what I was signing."

12 Book, p. 333.

13                "Filed by the Attorney General's office, the

14                BMQA's charges originated with a complaint

15                filed by Carolyn Williams in 1984.  They were

16                then fueled by the journal Gary Usher

17                compiled while we wrote songs together the

18                previous year and pressed by Marilyn and

19                Carl."

20 Book, p. 351.

21                "As soon as the Beachboys returned to L.A.,

22                he [Carl] had me sign a trust document,

23                giving him control of both my money and my

24                vote in the Beachboys' corporation, Brother

25                Records, Inc.  I didn't know what I was

26                signing, though he assured me it was for my

27                own protection."

28 Book, p. 268.

-9-

1               "For the first hour or so, Mike, Al, and Carl

2               avoided me like the plague.

3

4               "Then I decided to take action.  I found Carl

5               in his dressing room and asked if he wanted

6               to talk about what was going on.

7

8               'I can't, Brian,' he said.  'I've got to take

9               care of some business I've got going in

10              Colorado.' . . .  It was clear they were

11              shutting me out."

12 Book, p. 371.

13              "My brother Carl, on the other hand, stayed

14              in his room and drank."

15 Book, p. 376.

16              ". . . I was performing on my own, making my

17              own decisions, even venturing out to art

18              museums and restaurants while Carl was holed

19              up in his room, avoiding the outside world,

20              still drinking heavily, blind to his own

21              problems." . . . "But then Carl had trouble

22              making even the simplest decisions.  He had

23              always needed to consult with numerous people

24              -- his wife, lawyers, his spiritual master,

25              John Rogers."

26 Book, p. 378.

27              "Carl never once tried to talk to me

28              personally.  He showed absolutely no

1           sensitivity that I was being stripped of my

2           dignity and rights as a human being."

3    Book, p. 387.

4        22.   These and other statements in the Book are defamatory

5    per se in that, _inter alia_, they falsely portray Carl as an

6    abuser of alcohol; falsely impute to him involvement in the

7    purchase of illegal narcotics; falsely characterize him as an

8    emotionally troubled, weak individual who could be easily

9    intimidated and/or controlled by his wife, John Rogers, defendant

10   Landy, and others; falsely suggest that he was callous and

11   unconcerned about his brother Brian's physical and emotional

12   health and was willing to risk Brian's life to save money;

13   falsely state that he wrongfully withheld money that was payable

14   to Brian; and falsely state that he obtained control over Brian's

15   funds and Brian's position within the Beachboys' corporation by

16   trick and for improper purposes.  Said statements expose Carl to

17   contempt, ridicule and obloquy, and have a tendency to injure him

18   in his reputation.

19       23.   At the time defendants made said statements, they knew

20   that said statements would expose Carl to contempt, ridicule and

21   obloquy, and would have a tendency to injure him in his

22   occupation.

23       24.   Plaintiff Carl Wilson is informed and believes and

24   thereupon alleges that defendants made the defamatory statements

25   alleged hereinabove with actual malice (also known as

26   constitutional malice), in that said statements were published

27   with knowledge that they were false or with reckless disregard

28   for their truth or falsity.  Said plaintiff further alleges that

                                  -11-

v:\wil3\004\complaint.2

1  defendants knew that they had no reasonable basis in fact to make
2  said statements and that they had no reliable and unbiased
3  information with which to support said statements.  Said
4  plaintiff further alleges that defendants failed to properly
5  determine the truth or falsity of said statement prior to
6  publication.

7      25.  Plaintiff Carl Wilson is informed and believes and
8  thereupon alleges that defendants were negligent in making the
9  defamatory statements alleged hereinabove, in that said
10 statements were made without the exercise or ordinary and
11 reasonable care as to the truth or falsity of the statements.

12     26.  Defendants caused the Book to be distributed throughout
13 the United States.  The Book was widely sold in the State of New
14 Mexico.  Accordingly, the above-enumerated defamatory statements
15 were seen and read by persons who reside in the State of New
16 Mexico.  Defendants knew, or should have known, that said
17 defamatory statements would be read by individuals who reside in
18 said county and state.

19     27.  As a direct and proximate result of the publication of
20 said defamatory statements, Carl has suffered damage to his
21 reputation, shame, mortification, and emotional distress, all to
22 his general damage in the amount of Five Million Dollars
23 ($5,000,000).

24     28.  As a further direct and proximate result of the
25 publication of said defamatory statements, Carl has suffered
26 damages in that the public's erroneous belief in the truth of the
27 defamatory statements contained in the Book has caused the public
28 to lose interest in The Beachboys, the professional music group

-12-

1  in which Carl performs.  As a result of the public's loss of

2  interest, there has been a decline in revenue derived from the

3  group's live performances.  The precise amount of Carl's special

4  damages cannot be ascertained with certainty at this time, but is

5  in excess of Fifty Thousand Dollars ($50,000).  Carl will seek

6  leave to amend this Complaint to allege that amount once it has

7  been ascertained.

8      29.  Defendants' conduct was intentional and was done

9  maliciously, with ill will towards Carl and in conscious

10  disregard for his rights.  As a result, Carl is entitled to

11  punitive damages in an amount to be proven at trial.

12

13                  **THIRD CLAIM FOR RELIEF**

14              **(For Libel Against Both Defendants)**

15      30.  Plaintiff Carl Wilson hereby repeats and realleges

16  paragraphs 1-10 and 21-29 hereinabove and incorporate said

17  paragraphs herein by reference as though set forth at length.

18      31.  Carl is, and at all material times was, a member of the

19  popular musical group professionally known as "The Beachboys."

20      32.  The Book contains numerous false and defamatory

21  statements of and concerning The Beachboys, including statements

22  to the effect that The Beachboys deliberately exploited Carl's

23  brother and fellow band member, Brian Wilson, in order to earn

24  more money for themselves.  The Book suggests that, in

25  furtherance of that purpose, The Beachboys coerced Brian to write

26  songs and produce records even though the group knew that doing

27  so would damage Brian Wilson's mental health.  The Book also

28  falsely suggests that The Beachboys' efforts to obtain and

                              -13-

finance psychological/psychiatric treatment for Brian Wilson were

motivated by the group's desire to secure a lucrative record

deal.  The Book falsely alleges that, once that deal was signed,

The Beachboys had no further regard for Wilson's mental and

physical health.  In this vein, the Book falsely states that The

Beachboys "almost killed" Brian Wilson by requiring him to work

on songs and albums when he was not healthy enough to do so;

that, at one point, The Beachboys opposed Wilson's therapy

because it was interfering with the group's ability to coerce

Brian Wilson to make records with them; that The Beachboys

created a "Brian is back" publicity campaign in 1976 without

Brian Wilson's consent or approval, which campaign attempted to

capitalize on Brian Wilson's illness for pecuniary gain; and that

The Beachboys allowed their bodyguards to abuse and intimidate

Brian Wilson and his brother, Dennis Wilson.

33.  Readers of said defamatory statements reasonably
understood said statements to have personal reference and
application to members of The Beachboys, including Carl.

34.  As a direct and proximate result of said defamatory
statements, The Beachboys' reputation has been injured and the
good will associated with The Beachboys' name has been
diminished.

35.  As a further direct and proximate result of said
defamatory statements, the business of The Beachboys has been
damaged, including but not limited to business resulting from
record sales, merchandising and concert tours.  As a member of
The Beachboys, Carl has suffered pecuniary losses by virtue of
the diminution of such business.

-14-

36.   At the time defendants made said statements, they knew that said statements would expose The Beachboys and its members to contempt, ridicule and obloquy, and would have a tendency to injure it in its business.

37.   Plaintiff Carl Wilson is informed and believes and thereupon alleges that defendants made the defamatory statements alleged hereinabove with actual malice (also known as constitutional malice), in that said statements were made with knowledge that they were false or with reckless disregard for their truth or falsity.  Said plaintiff further alleges that defendants knew that they had no reasonable basis in fact to make said statements and that they had no reliable and unbiased information with which to support said statements.  Said plaintiff further alleges that defendants failed to properly determine the truth or falsity of said statement prior to publication.

38.   Plaintiff Carl Wilson is informed and believes and thereupon alleges that defendants were negligent in making the defamatory statements alleged hereinabove, in that said statements were made without the exercise of ordinary and reasonable care as to the truth or falsity of the statements.

39.   Defendants caused the Book to be distributed throughout the United States.  The Book was widely sold in the State of New Mexico.  Accordingly, said defamatory statements were seen and read by persons who reside in the State of New Mexico. Defendants knew, or should have known, that said defamatory statements would be read by individuals who reside in said county and state.

40.   As a direct and proximate result of the publication of said defamatory statements, The Beachboys have suffered damage to its reputation and to the good will associated with The Beachboys' name, all to Carl's general damage in the amount of Five Million Dollars ($5,000,000).

41.   Defendants' conduct was intentional and was done maliciously, with ill will towards The Beachboys and in conscious disregard for its rights.  As a result, Carl is entitled to punitive damages in an amount to be proven at trial.

WHEREFORE, plaintiffs pray for judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1.   For general damages in the amount of Five Million Dollars ($5,000,000); and

2.   For punitive damages in an amount to be proven at trial.

### ON THE SECOND CLAIM FOR RELIEF

1.   For general damages in the amount of Five Million Dollars ($5,000,000);

2.   For special damages in excess of Fifty Thousand Dollars ($50,000); and

3.   For punitive damages in an amount to be proven at trial.

### ON THE THIRD CLAIM FOR RELIEF

1.   For special damages in the amount of Five Million Dollars ($5,000,000); and

-16-

2.   For punitive damages in an amount to be proven at trial.

DATED:   August 3, 1994          LANGBERG, LESLIE & GABRIEL
                                 BARRY B. LANGBERG, ESQ.
                                 DEBORAH DROOZ, ESQ.
                                 2049 Century Park East, Suite 3030
                                 Los Angeles, California  90067
                                 (310) 286-7700


                                 By: _____
                                        DEBORAH DROOZ
                                     Attorneys for Plaintiffs
                                 CARL WILSON and AUDREE WILSON


DATED:   August 4, 1994          ROMERO LAW FIRM
                                 3602 Campus N.E.
                                 Albuquerque, New Mexico  87106
                                 (515) 262-2131


                                 By: _____
                                        ERNESTO J. ROMERO
                                     Attorneys for Plaintiffs
                                 CARL WILSON and AUDREE WILSON

-17-

1

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL**

2      Pursuant to Federal Rule of Civil Procedure 38(b),

3 plaintiffs hereby demand a trial by jury in this action.

4

5 DATED:  August 3, 1994          LANGBERG, LESLIE & GABRIEL
                                 BARRY B. LANGBERG, ESQ.
6                                DEBORAH DROOZ, ESQ.
                                 2049 Century Park East, Suite 3030
7                                Los Angeles, California  90067
                                 (310) 286-7700
8

9
                                 By: _____
10                                     DEBORAH DROOZ
                                     Attorneys for Plaintiffs
11                               CARL WILSON and AUDREE WILSON

12 DATED:  August 4, 1994          ROMERO LAW FIRM
                                 3602 Campus N.E.
13                               Albuquerque, New Mexico  87106
                                 (515) 262-2131
14

15
                                 By: _____
16                                     ERNESTO J. ROMERO
                                     Attorneys for Plaintiffs
17                               CARL WILSON and AUDREE WILSON

18

19

20

21

22

23

24

25

26

27

28

v:\wil3\004\complaint.2