FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

94 OCT 11 PM 2:46

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CARL WILSON, an individual, and AUDREE WILSON, an individual,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HARPERCOLLINS PUBLISHERS, INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No. CIV 94 892-JG<br><br>FIRST AMENDED COMPLAINT FOR LIBEL<br><br>JURY TRIAL DEMANDED |

COME NOW PLAINTIFFS CARL WILSON AND AUDREE WILSON who allege as follows:

### FACTS COMMON TO ALL ALLEGATIONS

1.　Plaintiff Carl Wilson ("Carl") is and, at all times herein mentioned, was an individual residing in the State of Colorado.

2.　Plaintiff Audree Wilson ("Audree") is and, at all times herein mentioned, was an individual residing in the County of Los Angeles, State of California.

*v:\wil3\010\1stamend.com*

3. Plaintiffs are informed and believe and thereupon allege that defendant HarperCollins Publishers, Inc. ("HarperCollins") is a corporation duly organized and existing under the laws of the State of Delaware with principal business offices in New York City.

4. The tortious acts complained of herein were committed, in part, in the State of New Mexico, and plaintiffs sustained injury in said state as a consequence of said tortious acts.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332(a) which confers the subject matter jurisdiction on the United States District Court in all cases in which there is a diversity of citizenship and the amount in controversy exceeds the sum of $50,000, excluding interest and costs.

6. Venue is proper pursuant to 28 U.S.C. section 1391(a) and (c).

7. Within three (3) years of the filing of this Complaint, defendant HarperCollins caused to be written, printed, published and disseminated to the general public, including the public throughout the State of New Mexico, a book entitled Wouldn't It Be Nice (the "Book").

8. The Book was purportedly written by Brian Wilson with Todd Gold. However, Plaintiffs are informed and believe and thereupon allege that Eugene Landy ("Landy"), with the knowledge and consent of HarperCollins, collaborated extensively in the authorship and editing of the Book, and in doing so, altered text and manipulated sources in a manner which impaired the accuracy of the Book, defamed Plaintiffs, and misused and misrepresented the credibility, if any, that the purported authorship by Brian

1 | Wilson lends to the Book. The actual malice and negligence of
2 | Defendant HarperCollins, as alleged below, in publishing the
3 | defamatory statements set forth below, are shown, <u>in part</u>, by the
4 | fact that HarperCollins knew or had reason to know that Landy was
5 | acting as previously alleged, and that Brian Wilson was the
6 | subject of a conservatorship action instituted to free him from
7 | the detrimental physical and psychological control of Landy,
8 | having been specifically put on notice of such by Plaintiffs, in
9 | written and oral communications from Plaintiffs' attorneys.
10 | Further, HarperCollins knew or had reason to know that Landy
11 | collaborated in the authorship of the Book in the manner
12 | described above. HarperCollins published the Book in reckless
13 | disregard of the aforementioned, and thus, in reckless disregard
14 | of the truth of the Book and the alleged defamatory statements.
15 | Further, the Book contains accounts that Brian Wilson repeatedly
16 | suffered from severe delusions resulting from schizophrenia and
17 | drug abuse. These accounts, in and of themselves, gave
18 | HarperCollins reason to doubt Brian Wilson's ability to
19 | accurately remember the events and conversations set forth in the
20 | Book. HarperCollins published the Book in reckless disregard of
21 | the aforementioned, and thus, in reckless disregard of the truth
22 | or falsity of the Book, and the alleged defamatory statements.
23 | Plaintiffs are informed and believe and thereupon allege that
24 | HarperCollins knew or should have known that publication of a
25 | book containing defamatory allegations about Plaintiffs generated
26 | by Landy would be especially damaging to Plaintiffs because the
27 | Book was ostensibly authored by Brian Wilson, and not by Landy.
28 |

## FIRST CLAIM FOR RELIEF

### (Libel)

9.  Plaintiff Audree Wilson hereby repeats and realleges paragraphs 1 through 8 hereinabove and incorporate said paragraphs herein by reference as though set forth at length.

10.  The Book contained the following statements of and concerning Audree that are false and defamatory:

"I suppose my mother drank to ease her pain;"
Book, p. 17.

> "My mom had been drinking.  She looked
> helpless and frightened, more frightened than
> I was."

Book, p. 18.

> "My mother was no help.  She almost never
> opposed my father, almost never rose up and
> defended her children. . . .  Who knows?  She
> might've been abused herself.  I often saw
> her pour a drink in the afternoon and
> continue sipping throughout the evening.  She
> was passive and aloof by the time my dad came
> home, a bystander who refused to intercede in
> the flagrant child abuse going on in front of
> her."

Book, p. 27.

> "She once looked on as he tied me to a tree
> for punishment.  Another time, while the rest
> of the family was eating dinner, my dad
> barged into my room and caught me

-4-

masturbating. . . . Not hiding his disgust, he shouted to my mom 'the boy's not to have dinner for two nights.' My mom complied. She sipped nervously and anxiously at her gin and tonic."

Book, p. 27.

"[My father] stalked off, irate, muttering threats under his breath, and continuing his tirade in another room. My mother listened passively, as always, refusing to take either side in the matter."

Book, p. 48.

11. These and other statements in the Book are defamatory per se in that they falsely portray Audree as an alcoholic, an unfit mother and as an individual so emotionally demoralized that she was incapable of defending herself or her children against severe abuse. Said statements expose Audree to contempt, ridicule and obloquy, and have a tendency to injure her in her vocation.

12. At the time defendant made said statements, it knew that said statements would expose Audree to contempt, ridicule and obloquy, and would have a tendency to injure her in her vocation.

13. Plaintiff Audree Wilson is informed and believes and thereupon alleges that defendant made the defamatory statements alleged hereinabove with actual malice (also known as constitutional malice), in that said defamatory statements were made with knowledge that they were false or with reckless

-5-

disregard for their truth or falsity. Said plaintiff further alleges that defendant knew that it had no reasonable basis in fact to publish said statements and that it had no reliable and unbiased information with which to support said statements, in part, for the reasons set forth in paragraph 8 above. Plaintiff further alleges that defendant failed to properly determine the truth or falsity of said statements prior to publication.

14. Plaintiff Audree Wilson is informed and believes and thereupon alleges that defendant was negligent in publishing the defamatory statements alleged hereinabove, in that said statements were published without the exercise of ordinary and reasonable care as to the truth or falsity of the statements.

15. Defendant caused the Book to be distributed throughout the United States. The Book was widely sold in the State of New Mexico. Accordingly, the above-enumerated defamatory statements were seen and read by persons who reside in the State of New Mexico. Defendant knew, or should have known, that said defamatory statements would be read by individuals who reside in said state and elsewhere.

16. As a direct and proximate result of the publication of said defamatory statements, Audree has suffered actual injury to her reputation and standing in the community, and further, she has suffered shame, mortification, personal humiliation, mental anguish and suffering and emotional distress, all to her general damage in the amount of Five Million Dollars ($5,000,000).

17. Defendant's conduct was intentional and was done maliciously, with ill will towards Audree and in conscious

v:\wil3\010\1stamend.com

1 | disregard for her rights. As a result, Audree is entitled to
2 | punitive damages in an amount to be proven at trial.

#### SECOND CLAIM FOR RELIEF

#### (For Libel)

18. Plaintiff Carl Wilson hereby repeats and realleges paragraphs 1 through 8 hereinabove and incorporates said paragraphs herein by reference as though set forth at length.

19. The Book contained the following false and defamatory statements of and concerning Carl:

> "One night, Dennis, Carl, and I were drunkenly walking through the redlight district in Amsterdam, heading for a restaurant while Dennis tried talking me into sampling one of the local girls." . . . "The piano bench was knocked over, punches were exchanged and before I knew it Carl and Dennis were dragging me out the front door and hustling me back to the hotel." . . . "After downing a few, Dennis, Carl, and Mike hit the dancefloor."

> "Dennis smuggled heroin into New Zealand . . . Carl, trying to calm the turbulence by admitting his involvement in the purchase of the heroin, ended up getting punched in the face by Rocky."

Book, p. 252.

-7-

> "Within a week Carl was in Dr. Landy's office, asking how much the treatment would cost." . . . "Dr. Landy explained himself clearly, knowing Carl was going to take the information he got from the meeting and tell Marilyn, who had helped him through the dissolution of his marriage and now was providing him comfort in dealing with me." . . . "Carl never liked Dr. Landy's bluntness and was scared of him." . . . "Carl and Al complained Dr. Landy's fees were outrageous." . . . "Predictably, the first thing they wanted to discuss wasn't my health, it was Dr. Landy's fee."

Book, pp. 273-275.

> ". . . Several weeks before Christmas 1983, Carl and his manager, Jerry Schilling, approached Dr. Landy about treating Dennis." . . . "The next day, Schilling called Landy and told him Carl needed longer to make up his mind. The price was steep, too steep, he thought for the Beachboys to carry." "Beyond that, Carl didn't want to upset his family's holiday plans by having, as Dr. Landy suggested, an intervention in Lake Arrowhead. Carl suggested talking after the holidays." . . . "Carl was adamant, though; he didn't want to deal with the problem until after New

-8-

```
 1                Year."
 2   Book, pp. 311-312.
 3                "Carl didn't know what to do.  Before making
 4                any decisions, he insisted on consulting with
 5                John Rogers, a cult leader Carl referred to
 6                as his spiritual master."
 7   Book, p. 314.
 8                "In early 1986, Carl threw his weight into
 9                the war against Dr. Landy." . . . "But the
10                Beachboys loathed the independence Dr. Landy
11                was giving me.  They hated that I was
12                beginning to be able to say no to them and
13                act on my own thoughts.  They resented that I
14                wrote songs, not with Dr. Landy, but without
15                them. . . .
16                "The struggle escalated when Carl began
17                withholding my paychecks and money.  That
18                authority was his through the Brian Wilson
19                Trust of 1982, which he had me sign prior to
20                Dr. Landy's beginning treatment again . . ."
21   Book, p. 332.
22                "In Carl's opinion, the trust was supposed to
23                protect me from Dr. Landy, but as I got
24                saner, I began questioning my brother.  I
25                couldn't remember signing the document in the
26                first place.  I was too incompetent at the
27                time to know what I was signing."
28   Book, p. 333.
```

>"Filed by the Attorney General's office, the BMQA's charges originated with a complaint filed by Carolyn Williams in 1984. They were then fueled by the journal Gary Usher compiled while we wrote songs together the previous year and pressed by Marilyn and Carl."

Book, p. 351.

>"As soon as the Beachboys returned to L.A., he [Carl] had me sign a trust document, giving him control of both my money and my vote in the Beachboys' corporation, Brother Records, Inc. I didn't know what I was signing, though he assured me it was for my own protection."

Book, p. 268.

>"For the first hour or so, Mike, Al, and Carl avoided me like the plague.
>
>"Then I decided to take action. I found Carl in his dressing room and asked if he wanted to talk about what was going on.
>
>'I can't, Brian,' he said. 'I've got to take care of some business I've got going in Colorado.' . . . It was clear they were shutting me out."

Book, p. 371.

1  "My brother Carl, on the other hand, stayed
2  in his room and drank."
3 Book, p. 376.
4  ". . . I was performing on my own, making my
5  own decisions, even venturing out to art
6  museums and restaurants while Carl was holed
7  up in his room, avoiding the outside world,
8  still drinking heavily, blind to his own
9  problems." . . . "But then Carl had trouble
10  making even the simplest decisions.  He had
11  always needed to consult with numerous people
12  -- his wife, lawyers, his spiritual master,
13  John Rogers."
14 Book, p. 378.
15  "Carl never once tried to talk to me
16  personally.  He showed absolutely no
17  sensitivity that I was being stripped of my
18  dignity and rights as a human being."
19 Book, p. 387.
20      20.  These and other statements in the Book are defamatory
21 per se in that, inter alia, they falsely portray Carl as an
22 abuser of alcohol; falsely impute to him involvement in the
23 purchase of illegal narcotics; falsely characterize him as an
24 emotionally troubled, weak individual who could be easily
25 intimidated and/or controlled by his wife, John Rogers, Landy,
26 and others; falsely suggest that he was callous and unconcerned
27 about his brother Brian's physical and emotional health and was
28 willing to risk Brian's life to save money; falsely state that he

-11-

wrongfully withheld money that was payable to Brian; and falsely state that he obtained control over Brian's funds and Brian's position within the Beachboys' corporation by trick and for improper purposes. Said statements expose Carl to contempt, ridicule and obloquy, and have a tendency to injure him in his reputation.

21. At the time defendant made said statements, it knew that said statements would expose Carl to contempt, ridicule and obloquy, and would have a tendency to injure him in his occupation.

22. Plaintiff Carl Wilson is informed and believes and thereupon alleges that defendant published the defamatory statements alleged hereinabove with actual malice (also known as constitutional malice), in that said statements were published with knowledge that they were false or with reckless disregard for their truth or falsity. Said plaintiff further alleges that defendant knew that it had no reasonable basis in fact to publish said statements and that it had no reliable and unbiased information with which to support said statements, in part, for the reasons set forth in paragraph 8, above. Said plaintiff further alleges that defendant failed to properly determine the truth or falsity of said statements prior to publication.

23. Plaintiff Carl Wilson is informed and believes and thereupon alleges that defendant was negligent in publishing the defamatory statements alleged hereinabove, in that said statements were published without the exercise or ordinary and reasonable care as to the truth or falsity of the statements.

v:\wil3\010\1stamend.com

24. Defendant caused the Book to be distributed throughout the United States. The Book was widely sold in the State of New Mexico. Accordingly, the above-enumerated defamatory statements were seen and read by persons who reside in the State of New Mexico. Defendant knew, or should have known, that said defamatory statements would be read by individuals who reside in said state and elsewhere.

25. As a direct and proximate result of the publication of said defamatory statements, Carl has suffered actual injury to his reputation and standing in the community, and further, he has suffered shame, mortification, personal humiliation, mental anguish and suffering and emotional distress, all to his general damage in the amount of Five Million Dollars ($5,000,000).

26. As a further direct and proximate result of the publication of said defamatory statements, Carl has suffered special damages in that the public's erroneous belief in the truth of the defamatory statements contained in the Book has caused the public to lose interest in The Beachboys, the professional music group in which Carl performs. As a result of the public's loss of interest, there has been a decline in revenue derived from the group's live performances and record sales, which has resulted in a loss of business profits and a loss of salary to Carl. The precise amount of Carl's special damages cannot be ascertained with certainty at this time, but is in excess of Fifty Thousand Dollars ($50,000). Carl will seek leave to amend this Complaint to allege that amount once it has been ascertained.

27. Defendant's conduct was intentional and was done maliciously, with ill will towards Carl and in conscious disregard for his rights. As a result, Carl is entitled to punitive damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### (For Libel)

28. Plaintiff Carl Wilson hereby repeats and realleges paragraphs 1-8 and 19-27 hereinabove and incorporate said paragraphs herein by reference as though set forth at length.

29. Carl is, and at all material times was, a member of the popular musical group professionally known as "The Beachboys."

30. The Book contains numerous false and defamatory statements of and concerning The Beachboys, including statements to the effect that The Beachboys deliberately exploited Carl's brother and fellow band member, Brian Wilson, in order to earn more money for themselves. The Book suggests that, in furtherance of that purpose, The Beachboys coerced Brian to write songs and produce records even though the group knew that doing so would damage Brian Wilson's mental health. The Book also falsely suggests that The Beachboys' efforts to obtain and finance psychological/psychiatric treatment for Brian Wilson were motivated by the group's desire to secure a lucrative record deal. The Book falsely alleges that, once that deal was signed, The Beachboys had no further regard for Brian Wilson's mental and physical health. In this vein, the Book falsely states that The Beachboys "almost killed" Brian Wilson by requiring him to work on songs and albums when he was not healthy enough to do so;

-14-

1  that, at one point, The Beachboys opposed Wilson's therapy
2  because it was interfering with the group's ability to coerce
3  Brian Wilson to make records with them; that The Beachboys
4  created a "Brian is back" publicity campaign in 1976 without
5  Brian Wilson's consent or approval, which campaign attempted to
6  capitalize on Brian Wilson's illness for pecuniary gain; and that
7  The Beachboys allowed their bodyguards to abuse and intimidate
8  Brian Wilson and his brother, Dennis Wilson.
9      31.  Readers of said defamatory statements reasonably
10 understood said statements to have personal reference and
11 application to members of The Beachboys, including Carl.
12     32.  At the time defendant made said statements, it knew
13 that said statements would expose The Beachboys and its members
14 to contempt, ridicule and obloquy, and would have a tendency to
15 injure them in their business.
16     33.  Plaintiff Carl Wilson is informed and believes and
17 thereupon alleges that defendant published the defamatory
18 statements alleged hereinabove with actual malice (also known as
19 constitutional malice), in that said statements were published
20 with knowledge that they were false or with reckless disregard
21 for their truth or falsity.  Said plaintiff further alleges that
22 defendant knew that they had no reasonable basis in fact to
23 publish said statements and that it had no reliable and unbiased
24 information with which to support said statements, in part, for
25 the reasons set forth in paragraph 8, above.  Said plaintiff
26 further alleges that defendant failed to properly determine the
27 truth or falsity of said statements prior to publication.
28

v:\wil3\010\1stamend.com

34. Plaintiff Carl Wilson is informed and believes and thereupon alleges that defendant was negligent in publishing the defamatory statements alleged hereinabove, in that said statements were published without the exercise of ordinary and reasonable care as to the truth or falsity of the statements.

35. Defendant caused the Book to be distributed throughout the United States. The Book was widely sold in the State of New Mexico. Accordingly, said defamatory statements were seen and read by persons who reside in the State of New Mexico. Defendant knew, or should have known, that said defamatory statements would be read by individuals who reside in said state and elsewhere.

36. As a direct and proximate result of said defamatory statements, The Beachboys' reputation has been injured and the good will associated with The Beachboys' name has been diminished. As a member of The Beachboys, Carl has suffered actual injury to his reputation and standing in the community, and further, has suffered shame, mortification, personal humiliation, mental anguish and suffering, and emotional distress, all to his general damage in the amount of Five Million Dollars ($5,000,000).

37. As a further direct and proximate result of said defamatory statements, the business of The Beachboys has been damaged, including but not limited to business resulting from record sales, merchandising and concert tours. As a member of The Beachboys, Carl has suffered special damages in that he has suffered pecuniary losses by virtue of the diminution of such business, including loss of business profits and loss of salary. The precise amount of special damages suffered by Carl cannot be

-16-

ascertained with certainty at this time, but is in excess of Fifty Thousand Dollars ($50,000). Carl will seek leave to amend this Complaint to allege that amount once it has been ascertained.

38. Defendant's conduct was intentional and was done maliciously, with ill will towards The Beachboys and in conscious disregard for its rights. As a result, Carl is entitled to punitive damages in an amount to be proven at trial.

WHEREFORE, plaintiffs pray for judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1. For general damages in the amount of Five Million Dollars ($5,000,000); and

2. For punitive damages in an amount to be proven at trial.

### ON THE SECOND CLAIM FOR RELIEF

1. For general damages in the amount of Five Million Dollars ($5,000,000);

2. For special damages in excess of Fifty Thousand Dollars ($50,000); and

3. For punitive damages in an amount to be proven at trial.

### ON THE THIRD CLAIM FOR RELIEF

1. For general damages in the amount of Five Million Dollars ($5,000,000);

2. For special damages in excess of Fifty Thousand Dollars ($50,000); and

v:\wil3\010\1stamend.com

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiffs hereby demand a trial by jury in this action.

DATED: October 7, 1994

LANGBERG, LESLIE & GABRIEL
JODY R. LESLIE, ESQ.
BETH F. DUMAS, ESQ.
2049 Century Park East, Suite 3030
Los Angeles, California 90067
(310) 286-7700


By: /s/ Beth Dumas
BETH F. DUMAS
Attorneys for Plaintiffs
CARL WILSON and AUDREE WILSON

DATED: October 10, 1994

ROMERO LAW FIRM
3602 Campus N.E.
Albuquerque, New Mexico 87106
(515) 262-2131


By: /s/
ERNESTO J. ROMERO
Attorneys for Plaintiffs
CARL WILSON and AUDREE WILSON

v:\wil3\010\1stamend.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing pleading was hand-delivered to opposing counsel of record, local counsel, William S. Dixon, Esq., Rodey, Sloan, Akin, Dickason & Robb P.A., P.O. Box 1888, Albuquerque, N.M. 87103-1888 and sent by fascimilie transmission to R. Bruce Rich, Esq., Weil, Gotchal & Manges, 767 Fifth Avenue, New York, New York 1053, (212) 310-8007 this 10th day of October, 1994

_____
Ernesto J. Romero J.D.