IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, )
and AUDREE WILSON, an )
individual, )
                                )
     Plaintiffs, )
                                )
    v. )
                                )
HARPERCOLLINS PUBLISHERS, )
INC., a Delaware corporation, )
     Defendant. )

Case No. CIV 94 892 JC

DECLARATION OF BARRY B.
LANGBERG IN SUPPORT OF
PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO HARPERCOLLINS'
MOTION FOR SUMMARY JUDGMENT

I, BARRY B. LANGBERG, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am a partner in the law firm of Langberg, Cohn & Drooz, formerly known as Langberg, Leslie & Gabriel, counsel of record for Plaintiffs Carl Wilson and Audree Wilson in the above captioned matter. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2. I was the attorney, along with my then colleague, Jody Leslie, representing Carl Wilson, Audree Wilson, Carnie Wilson and Wendy Wilson, with respect to the Conservatorship proceeding involving Brian Wilson in the Los Angeles Superior Court. Audree Wilson is Brian's mother, Carl Wilson his brother, and Carnie and Wendy are his daughters. Our clients were Petitioners requesting the court to establish a Conservatorship over the person and estate of Brian Wilson. The purpose of bringing the proceeding was to free the emotionally disturbed Brian Wilson from the total

and absolute personal and economic control of Eugene Landy. Landy was a defrocked psychologist who had, for years, engaged in the full time pursuit of controlling Brian Wilson's life and profiting therefrom. Landy had voluntarily surrendered his psychology license in the midst of an investigation by the Psychology Examining Committee of the Board of Medical Quality Assurance of the State of California.

    3. In preparing our case in the Conservatorship proceeding, we pursued various avenues of formal discovery and informal investigation. As a result, I came into possession of a substantial amount of information which, taken together, painted a clear and unassailable picture of Eugene Landy's control over Brian Wilson. This control extended to having twenty-four hour "guards" watching Brian, the screening of his telephone calls and the administering of drugs. Furthermore, Landy had formed various partnerships between himself and Brian, whereby Landy owned property with Brian and was receiving substantial monetary sums. The evidence of the foregoing was irrefutable, and ultimately resulted in the attorneys for Brian Wilson agreeing to enter into a settlement agreement in the Conservatorship proceeding. The settlement agreement included the court-enforced severing of Landy's relationship with Brian and the unwinding of various business deals between Landy and Brian Wilson. In addition, the court appointed a Conservator for Brian (Jerome Billet) and a medical-psychological team was established to work with Brian. It is important to note that the evidence (especially the report of Dr. Garrett O'Connor) of Landy's control over virtually every aspect of Brian's daily life and

Brian's emotional disturbance was irrefutable and led to the settlement agreement.

4. On August 8, 1991, having obtained information about the forthcoming publication of a purported autobiography of Brian Wilson by HarperCollins, I wrote the publisher a letter, a copy of which is attached hereto marked Exhibit "A" and incorporated herein by reference. The purpose of the letter was to advise HarperCollins that Brian did not have the capacity to enter into a contract for the publication of a book or provide accurate information for that book. It was clear to me that Eugene Landy was using the book for his own purposes, both financial and professional. I had information that, over the years, Landy had made a number of statements about Carl Wilson and Audree Wilson that were false and defamatory. I was certain that Landy would take the opportunity to insert those statements in the purported autobiography of Brian Wilson. Therefore, I had received permission from my clients to contact HarperCollins and provide them with all of the information at my disposal that would show the truth. Unfortunately, no representative of HarperCollins ever accepted my offer to provide information and assist in investigation.

5. At the time of my letter to HarperCollins, the Conservatorship proceeding had not yet been settled. As a result, the confidentiality order that ultimately became part of the final Conservatorship settlement and order was not yet in place. At the time of my letter, I was free to provide HarperCollins with the considerable amount of information I had gathered showing the fact that Brian Wilson was under the control

of Landy, that many of the statements in the book about Carl Wilson and Audree Wilson were Landy's statements, not Brian's, and that those statements were false.

6.  If HarperCollins would have been interested in the truth, I would have provided them with the following:

   A.  An interview with Carl Wilson and Audree Wilson. Representatives of HarperCollins would have been given full opportunity to question Carl Wilson and Audree Wilson about the statements in the book and obtain facts that would have led to additional witnesses and information.

   B.  Information from Dr. Garrett O'Connor. Dr. O'Connor is a highly respected psychiatrist in Los Angeles. During the course of the Conservatorship proceeding, the parties had agreed to a ninety day separation between Brian Wilson and Eugene Landy. Dr. O'Connor had been employed to provide psychological evaluation and treatment for Brian during that ninety day period. In addition, Dr. O'Connor was to provide a report evaluating Brian Wilson's mental competence pursuant to the Guardianship and Conservatorship proceedings of the California Probate Code. In particular, Dr. O'Connor was to render an opinion with respect to Eugene Landy's undue influence over Brian Wilson. Dr. O'Connor saw Brian Wilson for a total of twenty-nine clinical interviews, and also conducted interviews of various family members and professional associates of Brian Wilson. He also conducted neuropsychological testing of Brian Wilson.

   Dr. O'Connor concluded that Brian Wilson was suffering from organic personality syndrome and possibly

schizophrenia and bi-polar disorder and/or post traumatic stress disorder.

Dr. O'Connor stated to me that he believed Brian Wilson was subject to the undue influence of Eugene Landy. Dr. O'Connor said he was using the term "undue influence" to refer to a situation where a therapist uses his position to dominate the will and manipulate the behavior of a patient for improper purposes.

Dr. O'Connor told me that he wanted to compare the manuscript of the forthcoming autobiography with what Mr. Wilson had to say during sessions with Dr. O'Connor. In an effort to obtain a copy of the manuscript, after Mr. Wilson had provided HarperCollins with written consent, Dr. O'Connor spoke with Senior Editor Tom Miller of HarperCollins and explained the purpose of the request. No copy of the manuscript was sent to Dr. O'Connor. Dr. O'Connor then sought to obtain a copy of the Book through the efforts of one of Mr. Wilson's attorneys, Mr. Engel. Engel was apparently successful in having a copy of the manuscript mailed to Mr. Wilson in care of his office at the partnership Brains and Genius (a partnership with Landy). However, although information was obtained that the Book had been delivered to the offices, it had disappeared. It was learned that Eugene Landy had removed the manuscript from the office. I would have explained to representatives of

HarperCollins that this event was indicative of Landy's control of Brian Wilson and showed, specifically with respect to their forthcoming book, that Landy was bent on keeping anyone who would know the truth from reading the manuscript.

I was also informed by Dr. O'Connor that Brian told him there was an effort by Landy to prevent Brian from reading the manuscript and that Landy controlled the content of the Book.

On several occasions, Dr. O'Connor was told by Brian that he was afraid of being murdered by Landy. On another occasion Brian told Dr. O'Connor that his mind and behavior were controlled by Landy and described it as being similar to "the presence of the Lord."

Dr. O'Connor also provided information concerning the multitude of medications being administered to Brian Wilson from Landy's associate, Dr. Samuels. This medication included Eskalith, Serontil, Xanax, Navane, Halcion, and Cogentin. Dr. O'Connor indicated that these drugs had a significant effect on Brian Wilson's mental processes. Dr. O'Connor was told by Brian Wilson that he heard "alien voices," including the voice of the devil which he described as being "somewhat like a stream of ticker tape information which entered his ear to imprint instructions on the surface of his brain." On another occasion Brian Wilson told Dr. O'Connor that he had

been killed twenty years ago in the hallway of his house on Bellagio Drive by a woman who had "zapped his brain with a bolt of black color" which flowed directly from her forehead to his, and exploded his mind.

        Dr. O'Connor concluded that Brian Wilson was not competent under current guardianship and Conservatorship provisions of the Probate Code of California and was not able to manage his own affairs. He also concluded that Landy had exerted undue influence over Brian Wilson in order to exploit Brian Wilson's psychiatric disorder and his reputation as a musician for personal, professional, and financial gain.

        Dr. O'Connor also described Landy's techniques, administered to Brian Wilson since 1983, which included a totalitarian treatment approach resembling techniques used by cults to achieve mind control and domination.

        At the time I wrote my August 8, 1991 letter to HarperCollins, Dr. O'Connor had concluded most of his evaluation of Brian and had provided me with the foregoing information. Subsequently, Dr. O'Connor prepared a written report which I would have provided to HarperCollins.

    C.    Various statements, taken under oath, of individuals who had contact with Brian Wilson prior to the institution of the Conservatorship proceeding. These statements (Statement of Patric Roarty, March 27,

1990; Melinda Ledbetter, March 27, 1990; David Leaf, March 27, 1990) all contained clear evidence of Landy's control of Brian Wilson and evidence of Brian Wilson's mental incapacity.

D. The deposition of Carl Wilson taken on October 15, 1990 and November 27, 1990. This deposition contained substantial information with respect to the family history of Brian Wilson and the mental condition of Brian Wilson. Review of this deposition transcript, combined with an interview of Carl and Audree Wilson, would have provided HarperCollins with substantial information contradicting the statements made in the manuscript purportedly by Brian Wilson but actually by Eugene Landy.

E. Information concerning the writings and psychological beliefs of Eugene Landy. It is clear when reading Landy's written work that he has a point of view that is supported by discrediting Brian Wilson's family and attributing actions to his brother and mother which would validate Landy's diagnosis and methods. I had received information from various sources that Landy had, over the years, made a number of false statements about Brian Wilson's family, including his brother Carl and his mother Audree. I would have assisted HarperCollins' representatives in establishing that these false statements had previously been made by Landy and I would have assisted them in

obtaining information from family and friends establishing the falsity of those statements. Unfortunately, some of the specific false statements about which I was concerned were the very same statements that later appeared in HarperCollins' published book.

7. Subsequent to the publication of the Book by HarperCollins, my partner Deborah Drooz and I made substantial efforts to obtain a correction and apology from HarperCollins. Finally, after the Conservatorship proceeding had terminated in the establishment of a court ordered Conservator and the court enforced termination of the relationship between Brian Wilson and Eugene Landy, HarperCollins realized the import of what I was trying to communicate in my August 8, 1991 letter. At last HarperCollins considered taking some steps to ameliorate the terrible damage that had been done to Carl Wilson and Audree Wilson. However, after long negotiations, HarperCollins declined to ever print any form of retraction or correction even after I explained to them that my clients did not want to file a lawsuit and would not file a lawsuit if they would only publish a correction and retraction.

Executed on September 26, 1995, at Los Angeles, California. I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

BARRY B. LANGBERG

wil2\010\langbrg2.dec

Exhibit A

LAW OFFICES

**BARRY B. LANGBERG & ASSOCIATES**
A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST

SUITE 3030

LOS ANGELES, CALIFORNIA 90067

BARRY B. LANGBERG
(213)286-7717

OF COUNSEL
J. WILLIAM HAYES

TELEPHONE
(213)286-7700

TELECOPIER
(213)282-6326

August 8, 1991

Mr. Tom Miller, Editor
HarperCollins Publishers
10 East 53 Street
New York, NY 10022

Dear Mr. Miller:

We represent Carl Wilson, Audree Wilson, Carnie Wilson and Wendy Wilson (the brother, the mother, and daughters of Brian Wilson) in the conservatorship proceeding in Los Angeles County California entitled In The Matter of Petition for the Conservatorship of Brian Wilson, Los Angeles Superior Court Case Number SP000008.

It has come to the attention of our clients that you intend to publish a book that is apparently an autobiography of Brian Wilson. Although we have not had an opportunity to review a manuscript of the book, we understand that there are numerous and substantial references to our clients, some of which may be defamatory.

Furthermore, allegations in the pending conservatorship proceeding seriously question the capacity of Brian Wilson to enter into a valid contract with you granting rights to publish the book. In addition, it has become apparent during the progress of the conservatorship proceeding that Brian Wilson may well be subject to the undue influence of Eugene Landy. We understand that Landy was instrumental in dealing with your company and was a principal participant in the writing of the book. As a result, the validity of both the contents of the book and the contract between Brian Wilson and your company are in serious doubt.

Of course, the existence of the conservatorship proceeding is a matter of public record. So too are the allegations concerning the undue influence of Mr. Landy on Brian Wilson. Therefore, you had actual and constructive knowledge of the issues that I have raised in this letter. Your publication of the book could result in serious harm and damage to both Brian and his family. I would suggest that prior to publication you

HC 00752

LAW OFFICES
## BARRY B. LANGBERG & ASSOCIATES
A PROFESSIONAL CORPORATION

Mr. Tom Miller, Editor
August 8, 1991
Page 2

determine the veracity of the statements made in the book and the validity of the contract giving you the rights to publish the book.

My clients, the family of Brian Wilson, will be happy to cooperate with you in any effort to investigate these matters. The fact is that it is very likely that much of the material in the book is not statements by Brian Wilson but instead defamatory accounts of events by Eugene Landy.

Please understand that in the event you recklessly publish this book we intend to pursue all legal remedies.

Yours very truly,

BARRY B. LANGBERG

BBL:cmc

F:..\wil3\001\krprclnl.bbl

HC 00753

Exhibit 2

# COUNTY OF LOS ANGELES
## SUPERIOR COURT OF CALIFORNIA

| Date | SEPTEMBER 11, 1995 | | | |
|---|---|---|---|---|
| HONORABLE | DAVID M. ROTHMAN | JUDGE Judge Pro Tem | G TAPANES Deputy Sheriff | Deputy C |
| HONORABLE | R KENWORTHY | Court Attendant | J CARDENAS | Repo Electronic Recording Mor |

SP000008 In Re the Matter of the Conservatorship of:

BRIAN D. WILSON

Counsel for Plaintiff: CARL WILSON & AUDREE WILSON, MOVING PARTIES: BARRY B LANGBERG & ASSOC. BY: BETH F. DUMAS (X)

Counsel for Defendant: CONSERVATOR: PAUL, HASTINGS, JANOFSKY & WALKER BY: SUZANNE E. RANDOLPH (X), SYLVIA M. VIRSIK (X)

MELINDA WILSON (X)

(Parties and counsel checked if prese

**NATURE OF PROCEEDINGS:** MOTION BY CARL & AUDREE WILSON FOR MODIFICATION OF COURT'S CONFIDENTIALITY ORDER

Matter is called for hearing and argued.

Motion of Carl and Audree Wilson to release 4 documents that are to be used in the New Mexico Libel proceedings, in the United State Federal District Court, case number: 94CIV 892 JC, is ruled on as follows:

1. The psychological and chemical evaluation report by Dr. Garret O'Connor, of 10-04-91 may be used by the Moving Party in the New Mexico litigation under seal, because the Court is informed that said document has already been referred to in litigation by other parties, and appears to be in the possession of the other parties.

2. As to all other requests, the motion is denied.

3. The Court finds that the order re: sealing of 2-3-92 in this case does not prevent any witness in the Conservatorship proceeding from giving testimony or providing declarations in other proceedings.

4. This is not a finding by the Court as to the contents or requirements contained in the settlement agreement of the Conservatorship. The Court makes no finding that the contents or requirements of the settlement agreement in this case allow any party or counsel to testify or make any declarations of this case in other court proceedings.

The minute order of 2-3-92 and the minute order of today are ordered unsealed.

The taped proceedings of this date are ordered sealed. The Court allows a transcript of this proceeding to be prepared for the Law Offices of Barry B. Langberg and Associates.

The lodged documents are returned to the Moving Party in open court.



DEPT. WED

MINUTES ENTERED
9-11-95
COURT CLERK

76M414D2 (Rev. 7-92) 7-92     MINUTE ORDER

Exhibit 3

JSB

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT.** WE-K

| | | |
|---|---|---|
| DATE | FEBRUARY 3, 1992 | |
| HONORABLE | HIROSHI FUJISAKI   JUDGE | P. PAPPAS   DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | |
| V. McKNOWN | Deputy Sheriff / Court Attendant | D. MRAZ   Reporter E/R monitor (Parties and counsel checked if present) |

SP000008
IN THE MATTER OF THE PETITION
FOR CONSERVATORSHIP OF:

BRIAN WILSON

Counsel for Plaintiff/Petitioner: MILLER, EWALD, MONSON, HOSHAW & SCHECHTER
By: Thomas M. Monson ✓

Counsel for Defendant/Respondent: KINSELLA, BOESCH, FUJIKAWA & TOWLE
By: Gregory J. Aldisert ✓

Counsel for Objectors: BARRY B. LANGBERG
By: Jody R. Leslie ✓

Counsel for Dr. Landy: Dennis M. Warren ✓

Counsel for Conservator: Jerome S. Billet ✓

**NATURE OF PROCEEDINGS    PETITION FOR APPOINTMENT OF CONSERVATOR**

Matter is called for hearing.

In chambers, with the Clerk and Court Reporter present, certain proceedings are held regarding jurisdiction, the proposed conservator, confidentiality, and various documents that have been filed and modification of the proposed order appointing conservator.

The Court states that the Court will consider a supplemental or additional voluntary request by the proposed conservatee for appointment of conservator to be an exception under 1826(O) of the Probate Code and that the Court can dispense with a court investigative report.

The Court finds that the petitioners Audrey Wilson, Carnie Wilson, Wendy Wilson, Carle Wilson and Stanley Love have consented to the jurisdiction of this Court by filing the petition for appointment of conservator and that Dr. Eugene Landy, Kevin Leslie, and Brian Wilson will orally consent to the jurisdiction of this Court to issue the conservatorship order and the restraining order.

The Court has read and considered the points and authorities that have been submitted by counsel and finds the considerations are compelling, that is, the conservatee's health and well-being outweight the public's interest in the details of the settlement and order.

The Court orders the file and the orders that the Court is entering with regards to the newly filed restraining order and the order appointing the probate conservator sealed for the following reasons: That the purpose of the entire proceeding is to protect the health, both mental and physical of the proposed conservatee, as well as his estate, and in order to insure that the proposed conservatee's continued health is safeguarded. That it would be in the best interest of the proposed conservatee that the provisions of the order

Page 1 of 5 Pages

ncotWE-K

MINUTES ENTERED
2/3/92

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT.** WE-K

DATE: FEBRUARY 3, 1992

HONORABLE HIROSHI FUJISAKI JUDGE

HONORABLE V. McKNOWN JUDGE PRO TEM

Deputy Sheriff Court Attendant

P. PAPPAS DEPUTY CLERK

D. MRAZ Reporter E/R monitor

(Parties and counsel checked if present)

SP000008
IN THE MATTER OF THE PETITION FOR CONSERVATORSHIP OF:

BRIAN WILSON ✓

Counsel for Petitioner: MILLER, EWALD, MONSON, HOSHAW & SCHECHTER
By: Thomas M. Monson ✓

Counsel for Respondent: KINSELLA, BOESCH, FUJIKAWA & TOWLE
By: Gregory J. Aldisert ✓

Counsel for Objectors: BARRY B. LANGBERG
By: Jody R. Leslie ✓

Counsel for Dr. Landy: Dennis M. Warren ✓

Counsel for Conservator: Jerome S. Billet ✓

Kevin Leslie, In Propria Persona ✓

**NATURE OF PROCEEDINGS: PETITION FOR APPOINTMENT OF CONSERVATOR**

and settlement not be a matter of public disclosure, as a public disclosure in the Court's opinion would be harmful to the proposed conservatee's health both because of its immediate effect on him personally, and secondarily, through the effect that it may have upon his career and public image.

The Court finds that it is in the interest of justice that an action taken for the purpose of preserving the proposed conservatee's health and well-being not itself be the basis on which his health and well-being is injured.

The Court orders that all counsel and parties provide forthwith whatever is necessary by means of information and records to the conservator for purposes of an inventory and appraisement to be made immediately.

Counsel are directed by the Court to prepare a modified order appointing conservator and submit the modified order appointing conservator, approved as to form and content by everyone, to the Court for signature and filing under seal.

IN OPEN COURT:
Counsel for the proposed conservatee orally moves the Court to amend the answer to voluntary consent to a conservatorship over the person and estate of the proposed conservatee.

Brian Wilson, Eugene Landy, and Kevin Leslie are sworn and testify.

The Court informs the proposed conservatee that the effect of the conservatorship is to place the control of his assets and his person within the supervision of the Court, through the conservator, and that the nature of the supervision will be that which is set out in the order appointing conservator and within the terms of the settlement agreement entered into by the proposed conservatee.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE FEBRUARY 3, 1992     DEPT. WE-K

HONORABLE HIROSHI FUJISAKI    JUDGE     P. PAPPAS DEPUTY CLERK

HONORABLE    JUDGE PRO TEM

V. McKNOWN   Deputy Sheriff / Court Attendant     D. MRAZ Reporter E/R monitor

(Parties and counsel checked if present)

SP000008

IN THE MATTER OF THE PETITION FOR CONSERVATORSHIP OF:

BRIAN WILSON ✓

| | |
|---|---|
| Counsel for Petitioner | MILLER, EWALD, MONSON, HOSHAW & SCHECHTER By: Thomas M. Monson ✓ |
| Counsel for Respondent | KINSELLA, BOESCH, FUJIKAWA & TOWLE By: Gregory J. Aldisert ✓ |
| Counsel for Objectors | BARRY B. LANGBERG By: Jody R. Leslie ✓ |
| Counsel for Dr. Landy | Dennis M. Warren ✓ |
| Counsel for Conservator | Jerome S. Billet ✓ |

NATURE OF PROCEEDINGS    PETITION FOR APPOINTMENT OF CONSERVATOR

The Court inquires of the proposed conservatee if anyone used any form of coercion, emotionally, psychologically or any other way, to force the proposed conservatee to agree to treat this matter as a voluntary petition for conservatorship.

The proposed conservatee indicates his understanding of the effect of the conservatorship and that no one has used any coersion to force the conservatee to agree to a voluntary petition for conservatorship.

Oral motion of counsel for proposed conservatee to amend the answer to voluntary consent to conservatorship of person and estate is granted.

At the request and with the consent of the proposed conservatee, matter proceeds as a voluntary petition for conservatorship.

The Court inquires of Kevin Leslie, Brian Wilson, and Dr. Eugene Landy as follows:
Whether their signatures are affixed to the settlement agreement and whether they have discussed the nature of the settlement agreement with their counsel, including the exhibits, petition and proposed orders.
Whether they understand the settlement agreement, their consent to the jurisdiction of the Court, the implications of the settlement agreement, the consequences of violation of the Court order, and whether they believe that entering into the settlement agreement is in their best interest.

Brian Wilson, Dr. Eugene Landy, and Kevin Leslie respond in the affirmative to the Court's inquiries.

The Court further inquires of Brian Wilson, Dr. Eugene Landy

Page 3 of 5 Pages

76C76E (REV. 12-90) 12-90
8-227

DEPT WE-K    MINUTES ENTERED 2/3/92

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE FEBRUARY 3, 1992 | | DEPT. WE-K |
| HONORABLE HIROSHI FUJISAKI JUDGE | P. PAPPAS DEPUTY CLERK | |
| HONORABLE JUDGE PRO TEM | | |
| V. McKNOWN Deputy Sheriff Court Attendant | D. MRAZ Reporter E/R monitor | |

(Parties and counsel checked if present)

SP000008

IN THE MATTER OF THE PETITION FOR CONSERVATORSHIP OF:

BRIAN WILSON

Counsel for Petitioner: MILLER, EWALD, MONSON, HOSLAW & SCHECHTER By: Thomas M. Monson ✓

Counsel for Respondent: KINSELLA, BOESCH, FUJIKAWA & TOWLE By: Gregory J. Aldisert ✓

Counsel for Objectors: BARRY B. LANGBERG By: Jody R. Leslie ✓

Counsel for Dr. Landy: Dennis M. Warren ✓

Counsel for Conservator: Jerome S. Billet ✓

NATURE OF PROCEEDINGS: PETITION FOR APPOINTMENT OF CONSERVATOR

and Kevin Leslie whether they entered into this settlement agreement and submitted to the jurisdiction of this Court with regards to this proceeding freely and voluntarily and not because of any threats or use of force, directly or indirectly, against them, their family or loved ones, friends or relatives, or made any promises to them except those that are set forth in the settlement agreement.

Brian Wilson, Dr. Eugene Landy, and Kevin Leslie respond in the affirmative to the Court's inquiries.

Conservatorship of Brian Wilson is granted. The Court finds it to be a voluntary conservatorship.

Robert Fainer, Judge retired, is appointed conservator of person and estate with powers under Sections 1873, 2402, 2358, and 2590 of the Probate Code.

Petition for injunction prohibiting harassment granted. Brian Wilson and Dr. Eugene Landy are mutually restrained pursuant to stipulation and mutual restraining order prohibiting harassment signed by the Court and filed this date.

The restraining order signed by the Court on December 13, 1991 is ordered to remain in full force and effect as of January 1, 1992 and continuing thereafter during the period of the conservatorship.

All documents in the instant case, #SP000008, including the petition filed this date relating to harassment and the order, case #SS 002629, are ordered sealed. The settlement agreement of the parties is ordered filed under seal.

All parties are ordered not to release any of the contents of said documents without prior order of the Court.

Pag 4 of 5 Pages          DEPT WE-K          MINUTES ENTERED 2/3/92

TSC76E (REV. 12-00) 12-90

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT.** WE-K

**DATE** FEBRUARY 3, 1992

**HONORABLE** HIROSHI FUJISAKI    JUDGE    P. PAPPAS    DEPUTY CLERK

**HONORABLE**    JUDGE PRO TEM

V. McKNOWN    Deputy Sheriff / Court Attendant    D. MRAZ    Reporter E/R monitor

(Parties and counsel checked if present)

SP000008

IN THE MATTER OF THE PETITION FOR CONSERVATORSHIP OF:

BRIAN WILSON ✓

Counsel for Petitioner: MILLER, EWALD, MONSON, HOSHAW & SCHECHTER
By: Thomas M. Monson ✓

Counsel for Respondent: KINSELLA, BOESCH, FUJIKAWA & TOWLE
By: Gregory J. Aldisert ✓

Counsel for Objectors: BARRY B. LANGBERG
By: Jody R. Leslie ✓

Counsel for Dr. Landy: Dennis M. Warren ✓

Counsel for Conservator: Jerome S. Billet ✓

**NATURE OF PROCEEDINGS**    PETITION FOR APPOINTMENT OF CONSERVATOR

The Court orders the bills for legal services rendered to the conservatee and the petitioners to be submitted to the conservator who in turn will submit same to the Court for specific approval.

The Court reserves jurisdiction to enforce the terms and conditions of the settlement agreement and to make further orders as the Court deems appropriate.

THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

ATTEST **JAN 10 1995**

Edward M. Kritzman, Executive Officer/Clerk of the Superior Court of the State of California for the County of Los Angeles.

By _____, Deputy



Page 5 of 5 Pages    DEPT WE-K

76C76E (REV. 12-90) 12-90
B-887

MINUTES ENTERED
2/3/92
COUNTY CLERK