```
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
------------------------------------x
CARL WILSON, an individual, and      )
AUDREE WILSON, an individual,        )
                                     )
                  Plaintiffs,        )
                                     )
         v.                          )  94 Civ. 892(JC)
                                     )
HARPERCOLLINS PUBLISHERS INC.,       )  SUPPLEMENTAL AFFIDAVIT
a Delaware corporation,              )  OF MATTHEW E. MARTIN
                                     )
                  Defendant.         )
------------------------------------x

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )
```

MATTHEW E. MARTIN, being duly sworn, deposes and says:

1. I submit this supplemental affidavit in further support of HarperCollins' motion for summary judgment in the above-captioned case.

2. In accordance with the stipulated Scheduling Order operative in this case, my original affidavit related exclusively to my activities relating to HarperCollins' pre-publication review of WOULDN'T IT BE NICE -- MY OWN STORY. Now, however, statements made in the Declarations of Barry Langberg and Deborah Drooz compel me to submit this supplemental affidavit describing post-publication events for the purpose of showing that the statements made by Mr. Langberg and Ms. Drooz are not admissible under the Federal Rules of Evidence.

3. In early August, 1992 (almost a full year following publication of the hardback edition of WOULDN'T IT BE NICE), Mr. Langberg sent to HarperCollins a letter claiming that WOULDN'T IT BE NICE had defamed their clients (Carl and Audree Wilson) and demanding that the allegedly defamatory material be deleted from the paperback version of the book. A copy of Mr. Langberg's letter is appended hereto as Exhibit 1.

4. On August 4, 1992, I wrote back to Mr. Langberg and asked him to delineate the allegedly defamatory passages from the book. A copy of my letter is appended hereto as Exhibit 2.

5. On September 1, 1992, Ms. Drooz faxed me a letter dated August 31, 1992 setting forth twenty-one passages which her clients claimed were defamatory. A copy of Ms. Drooz' letter is appended hereto as Exhibit 3.

6. Although our outside counsel who vetted the manuscript, Eugenie Gavenchak, and I both carefully reviewed Ms. Drooz' August 31 letter and I firmly believed that the statements claimed to defame Carl and Audree Wilson were either true, not defamatory or were statements of protected opinion, I nonetheless offered to settle their claims by deleting certain passages about them from the paperback edition in the interest of obviating potential litigation

and because the passages were relatively unimportant in the context of the book as a whole. I continued to negotiate the terms of a possible settlement with Ms. Drooz through the end of October, 1992.

7. On November 2, 1992, I wrote to Ms. Drooz to advise her that for reasons unrelated to her clients' claims (and not pertinent here), HarperCollins had decided not to publish the paperback edition of WOULDN'T IT BE NICE. A copy of my November 2, 1992 letter is appended hereto as Exhibit 4.

8. I am compelled to respond to a second topic raised in plaintiffs' opposition papers. Plaintiffs make the assertion that Dr. O'Connor's psychological profile of Brian Wilson was available to HarperCollins prior to publication of the book. It was not. As I testified in my deposition, the actual dissemination of the book was effected when we began shipping copies of the book from our warehouse in Scranton, Pennsylvania to wholesale and retail accounts across the country as early as the last week in

September -- well before the O'Connor report, which is dated October 4, 1991, became available.

                                        Matthew E. Martin

Subscribed and sworn to
before me this 16th day of
October, 1995

_____
Notary Public

    BARI-SUE HOMELSKY
NOTARY PUBLIC, State of New York
       No. 31-4957044
  Qualified in New York County
Commission Expires October 2, 1997

LAW OFFICES

## BARRY B. LANGBERG & ASSOCIATES
A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST

SUITE 3030

LOS ANGELES, CALIFORNIA 90067

BARRY B. LANGBERG
(310)286-7717

J. WILLIAM HAYES
(1921 - 1992)

TELEPHONE
(310)286-7700

TELECOPIER
(310)284-8355

July 29, 1992

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Mr. William Shinker, Publisher
HarperCollins Publishers
10 East 53rd Street
New York, NY  10022

Dear Mr. Shinker:

    We represent Carl and Audree Wilson, the brother and mother of Brian Wilson.  On August 8, 1991, I wrote you concerning possible defamatory material that was contained in your then yet to be published book, <u>Wouldn't It Be Nice</u>.  Unfortunately, you chose to ignore the information that I provided in my letter concerning the undue influence of Eugene Landy, the existence of the then pending conservatorship proceeding, and the possible questionable validity of the contents of the book.

    Since you published the book, a conservator has been appointed for Brian Wilson.  I now understand that you intend to publish a paperback edition of the book.  The purpose of this letter is to ask you to reconsider the publication of that paperback edition based on the fact that it contains many inaccurate, false, and defamatory statements concerning my clients.

    Now that a conservator has been appointed for Brian Wilson, it should be evident to you that the statements I made in my August 8 letter had considerable basis in fact.  We believe that you have published a book that is, to a large extent, the work of Eugene Landy.  As a result, it contains much false and defamatory material.  Before you republish this material in the paperback edition, to be read by an even wider audience than that to which the book has already been exposed, I suggest that you delete the defamatory material.  I will be happy to delineate those statements which my clients believe are false and defamatory and assist you in any investigation you may wish to make.

F:..\WIL3\001\SHINKER.BBL

LAW OFFICES
BARRY B. LANGBERG & ASSOCIATES
A PROFESSIONAL CORPORATION

Mr. William Shinker
July 29, 1992
Page 2

  The publication of the hardback edition has already caused injury to Carl and Audree Wilson. You now have an opportunity to prevent further injury to them. Your failure to do so could only be regarded as a complete disregard for their rights and for the truth or falsity of the material contained in the book.

          Very truly yours,

          BARRY B. LANGBERG

BBL:btm

cc: Jody R. Leslie, Esq.
   Mr. Carl Wilson

F:..\WIL3\001\SHINKER.BBL

**PROOF OF SERVICE**
1013A (3) CCP

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3030, Los Angeles, California 90067.

    On July 30, 1992, I served the foregoing document described as letter from Barry B. Langberg, Esq., to Mr. William Shinker, dated July 30, 1992:

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

_X_ by placing _X_ the original ___ a true copy thereof enclosed in sealed envelopes addressed as follows:

Mr. William Shinker, Publisher
HarperCollins Publications
10 East 53rd Street
New York, NY 10022


_X_   BY FIRST CLASS MAIL

_X_   The envelope was mailed with postage thereon fully prepaid.

_X_   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    Executed on July 30, 1992, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

BARBARA CAPLAN                    _____

PROOF OF SERVICE
1013A (3) CCP

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3030, Los Angeles, California 90067.

On July 30, 1992, I served the foregoing document described as letter from Barry B. Langberg, Esq., to Mr. William Shinker, dated July 30, 1992:

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

_X_ by placing ___ the original _X_ a true copy thereof enclosed in sealed envelopes addressed as follows:

Mr. William Shinker, Publisher
HarperCollins Publications
10 East 53rd Street
New York, NY 10022


_X_   BY FIRST CLASS MAIL, RETURN RECEIPT REQUESTED

_X_   The envelope was mailed with postage thereon fully prepaid.

_X_   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on July 30, 1992, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


BARBARA CAPLAN                    _____



# HarperCollins*Publishers*

<u>BY FAX and FIRST CLASS MAIL</u>

August 4, 1992

Barry B. Langberg, Esq.
Barry B. Langberg & Associates
2049 Century Park East
Suite 3030
Los Angeles, California  90067

     RE: WOULDN'T IT BE NICE by Brian Wilson with Todd Gold

Dear Mr. Langberg:

     Your letter to William Shinker dated July 29, 1992 has been referred to me for a response.

     As I told you in my letter of August 14, 1991, WOULDN'T IT BE NICE underwent an extensive libel review process prior to publication.  When we published the book last fall, we were entirely confident that it had been written with Brian Wilson's full authority, and that it did not contain any material that was defamatory or otherwise in violation of any individual's rights.  We still believe that to be the case and were proceeding with that understanding in our plans to publish a paperback edition.

     If you would please identify for us in writing within the next 14 days, the specific passages from the book to which your clients object, and explain how the statements in question are false and defamatory, we will investigate your claims and give them due consideration before publishing the paperback edition.

     This letter is without prejudice to all of our rights and defenses in this matter.

                           Sincerely yours,

                           Matthew E. Martin

MEM/gj

LAW OFFICES OF
# LANGBERG, LESLIE, MANN & GABRIEL

AN ASSOCIATION INCLUDING A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST
SUITE 3030
LOS ANGELES, CALIFORNIA 90067

J. WILLIAM HAYES
(1921-1992)

TELEPHONE
(310)286-7700

TELECOPIER
(310)284-8355

DEBORAH DROOZ
(310)286-7725

August 31, 1992

<u>VIA TELECOPIER</u> (212) 207-7552

Matthew E. Martin, Esq.
Harper Collins Publishers
10 East 53rd Street
New York, New York, 10022-5299

Re: <u>WOULDN'T IT BE NICE by Brian Wilson with Todd Gold</u>

Dear Mr. Martin:

In accordance with our August 28, 1992 telephone conversation, and further to Barry Langberg's July 29, 1992 letter, we have completed our review of the above-referenced autobiography and have compiled a list of passages which we believe to be false and defamatory. At this time, our clients, Carl and Audree Wilson, are continuing to review the text for further inaccuracies which defame them or portray them in a false light. We shall advise you immediately if any such material comes to our attention. The following material is given without prejudice to our clients' rights in this matter.

## Carl Wilson

1. "One night, Dennis, Carl, and I were drunkenly walking through the redlight district in Amsterdam, heading for a restaurant while Dennis tried talking me into sampling one of the local girls." . . . "The piano bench was knocked over, punches were exchanged and before I knew it Carl and Dennis were dragging me out the front door and hustling me back to the hotel." . . . "After downing a few, Dennis, Carl, and Mike hit the dancefloor."

2. Page 252 - "Dennis smuggled heroine into New Zealand . . . Carl, trying to calm the turbulence by admitting his involvement in the purchase of the heroine, ended up getting punched in the face by Rocky."

LAW OFFICES OF
**LANGBERG, LESLIE, MANN & GABRIEL**
AN ASSOCIATION INCLUDING A PROFESSIONAL CORPORATION

Matthew E. Martin, Esq.
August 31, 1992
Page 2

3. Page 273-275 - "Within a week Carl was in Dr. Landy's office, asking how much the treatment would cost." . . . "Dr. Landy explained himself clearly, knowing Carl was going to take the information he got from the meeting and tell Marilyn, who had helped him through the dissolution of his marriage and now was providing him comfort in dealing with me." . . . "Carl never liked Dr. Landy's bluntness and was scared of him." . . . "Carl and Al complained Dr. Landy's fees were outrageous." . . . "Predictably, the first thing they wanted to discuss wasn't my health, it was Dr. Landy's fee."

4. Page 276 - "I don't care if he ever sings, plays again, or makes one more note of music,' said Carl."

5. Page 311-312 - ". . . Several weeks before Christmas 1983, Carl and his manager, Jerry Schilling, approached Dr. Landy about treating Dennis." . . . "The next day, Schilling called Landy and told him Carl needed longer to make up his mind. The price was steep, too steep, he thought for the Beachboys to carry." "Beyond that, Carl didn't want to upset his family's holiday plans by having, as Dr. Landy suggested, an intervention in Lake Arrowhead. Carl suggested talking after the holidays." . . . "Carl was adamant, though; he didn't want to deal with the problem until after New Year's."

6. Page 314 - "Carl didn't know what to do. Before making any decisions, he insisted on consulting with John Rogers, a cult leader Carl referred to as his spiritual master."

7. Page 332 - "In early 1986, Carl threw his weight into the war against Dr. Landy." . . . "But the Beachboys loathed the independence Dr. Landy was giving me. They hated that I was beginning to be able to say no to them and act on my own thoughts. They resented that I wrote songs, not with Dr. Landy, but without them. . . .

The struggle escalated when Carl began withholding my paychecks and money. That authority was his through the Brian Wilson Trust of 1982, which he had me sign prior to Dr. Landy's beginning treatment again . . .

8. Page 333 - "In Carl's opinion, the trust was supposed to protect me from Dr. Landy, but as I got saner, I began

LAW OFFICES OF
**LANGBERG, LESLIE, MANN & GABRIEL**
AN ASSOCIATION INCLUDING A PROFESSIONAL CORPORATION

Matthew E. Martin, Esq.
August 31, 1992
Page 3

questioning my brother. I couldn't remember signing the document in the first place. I was too incompetent at the time to know what I was signing."

9. Page 351 - "Filed by the Attorney General's office, the BMOA's charges originated with a complaint filed by Carolyn Williams in 1984. They were then fueled by the journal Gary Usher compiled while we wrote songs together the previous year and pressed by Marilyn and Carl."

10. Page 268 - "As soon as the Beachboys returned to L.A., he [Carl] had me sign a trust document, giving him control of both my money and my vote in the Beachboys' corporation, Brother Records, Inc. I didn't know what I was signing, though he assured me it was for my own protection."

11. Page 371 - "For the first hour or so, Mike, Al, and Carl avoided me like the plague.

Then I decided to take action. I found Carl in his dressing room and asked if he wanted to talk about what was going on.

'I can't, Brian,' he said. 'I've got to take care of some business I've got going in Colorado.' . . . It was clear they were shutting me out."

12. Page 376 - "My brother Carl, on the other hand, stayed in his room and drank."

13. Page 378 - ". . . I was performing on my own, making my own decisions, even venturing out to art museums and restaurants while Carl was holed up in his room, avoiding the outside world, still drinking heavily, blind to his own problems." . . . "But then Carl had trouble making even the simplest decisions. He had always needed to consult with numerous people -- his wife, lawyers, his spiritual master, John Rogers."

14. Page 387 - "Carl never once tried to talk to me personally. He showed absolutely no sensitivity that I was being stripped of my dignity and rights as a humanbeing."

LAW OFFICES OF
**LANGBERG, LESLIE, MANN & GABRIEL**
AN ASSOCIATION INCLUDING A PROFESSIONAL CORPORATION

Matthew E. Martin, Esq.
August 31, 1992
Page 4

## Audree Wilson

1. Page 17 - "I supposed my mother drank to ease her pain;"

2. Page 18 - "My mom had been drinking. She looked helpless and frightened, more frightened than I was."

3. Page 18 - "There were few hugs and kisses in my family. The only succor my mother offered was food."

4. Page 27 - "My mother was no help. She almost never opposed my father, almost never rose up and defended her children . . . Who knows? She might've been abused herself. I often saw her poor a drink in the afternoon and continue sipping throughout the evening. She was passive and aloof by the time my dad came home, a bystander who refused to interceded in the flagrant child abuse going on in front of her."

5. Page 27 - "She once looked on as he tied me to a tree for punishment. Another time, while the rest of the family was eating dinner, my dad barged into the room and caught me masturbating . . . Not hiding his disgust, he shouted to my mom 'the boy's not to have dinner for two nights.' My mom complied. She sipped nervously and anxiously at her gin and tonic."

6. Page 27 - "Suddenly, my dad threw a folded newspaper on the floor, opened it, and ordered me to take a shit. Right there. On the paper. I was petrified and began heaving with rasping sobs. I looked up toward my dad's menacing face with red eyes that pleaded to be forgiven whatever misdeed I did. I wanted to be excused. Hit. Anything but what he was asking me to do.

'Now!' He commanded.

Afterward, he forced me to look. He made my mother look too. Satisfied, he left the room. My mom hurried out right behind him. I was left alone, given the task of disposing of the excrement."

7. Page 48 - "[My father] stomped off, irate, muttering threats under his breath, and continuing his tirade in another

**LAW OFFICES OF**
**LANGBERG, LESLIE, MANN & GABRIEL**
AN ASSOCIATION INCLUDING A PROFESSIONAL CORPORATION

Matthew E. Martin, Esq.
August 31, 1992
Page 5


room.  My mother listened passively, as always, refusing to take either side in the matter."

                                       Very truly yours,

                                       Deborah Drooz

DD:tms

10 East 53rd Street  Telephone 212 207-7664  Matthew E. Martin
Fax ...  Assistant General Counsel
10022-5299

# HarperCollins*Publishers*

November 2, 1992

<u>BY FAX</u>
Confirmation Copy by Regular Mail

Deborah Drooz, Esq.
Langberg, Leslie, Mann & Gabriel
2049 Century Park East
Suite 3030
Los Angeles, California  90067

    RE: <u>WOULDN'T IT BE NICE by Brian Wilson with Todd Gold</u>

Dear Deborah:

    I am writing to inform you that for reasons unrelated to the claims made by your clients, Audrey Wilson and Carl Wilson, we have decided <u>not</u> to publish a paperback edition of WOULDN'T IT BE NICE next winter, as we had originally planned.  Should we decide to reissue the book at some time in the future, we will be sure to take into account the objections held by your clients.

    Our decision not to reissue the book in paperback at this time should not be construed as an admission of fault or liability on the part of HarperCollins and is without prejudice to our rights and defenses in this matter.

    Sincerely yours,

    Matthew E. Martin

MEM/gj

bcc: Ms. Cynthia Barrett
     Jerome S. Billet, Esq.
     Ms. Gladys Carr
     James A. Fox, Esq.
     Mr. Todd Gold
     Mr. Geoff Hannell
     Mr. Eugene Landy
     Michael Rosenfeld, Esq.
     Mr. William Shinker
     Ms. Karen Solem
     Mr. Dan Strone
     James P. Tierney, Esq.