UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NOV 27 1995

---

CARL WILSON, an individual, and )
AUDREE WILSON, an individual,   )
                                )
            Plaintiffs,         )
                                )
       v.                       )       94 Civ. 892 (JC)
                                )
HARPERCOLLINS PUBLISHERS INC.,  )
a Delaware corporation,         )
                                )
            Defendant.          )
_____)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
HARPERCOLLINS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

HarperCollins Publishers Inc. ("HarperCollins") submits this memorandum in reply to the points raised in plaintiffs' opposition to HarperCollins' motion to disqualify Barry Langberg and Deborah Drooz from serving as plaintiffs' counsel in this case ("Opp. Br.").

1. **Plaintiffs' Attempt To "Cure" Mr. Langberg's Ethical Violation.** In response to HarperCollins' pending motion for summary judgment, plaintiffs put Mr. Langberg forward as assertedly having knowledge of facts going to the very core of their theory of liability in this case, namely, that HarperCollins' pre-publication conduct amounted to "reckless disregard of the truth" of allegedly false and defamatory passages later appearing in Brian Wilson's autobiography. Mr. Langberg's proffer consists of a

90

declaration setting forth what he claims he would have told HarperCollins had HarperCollins called him to "investigate" the assertions he made in an August 8, 1991 letter to HarperCollins.

HarperCollins' reply papers on its summary judgment motion established that by the time it received Mr. Langberg's letter, it had already thoroughly investigated the assertions made in that letter, and satisfied itself concerning them. See HarperCollins Summary Judgment Reply Br. 15-17. HarperCollins further established that the statements in Mr. Langberg's declaration constitute inadmissible hearsay and ought not to be considered for purposes of summary judgment.[1] See id. 17-18.

Notwithstanding that Mr. Langberg's declaration forms no basis for denying summary judgment to HarperCollins (see HarperCollins' Summary Judgment Briefs), plaintiffs' proffer of Mr. Langberg as an assertedly key fact witness necessitated the filing of the instant motion for disqualification. Were the Court to deny summary judgment

---

1. In response to this disqualification motion, plaintiffs attempt to resuscitate Mr. Langberg's declaration by calling it merely "foundational" (see Opp. Br. 10-11). The fact is that Mr. Langberg's declaration recounts in detail what others purportedly told to him and wrote about in the context of a now-sealed court proceeding and has been offered by plaintiffs to establish the truth of the matters asserted in these out-of-court statements. They are, as such, inadmissible hearsay.

to HarperCollins, there is no question but that HarperCollins would be required to explore in depth exactly what Mr. Langberg claims to have known, from whom, and what he and they allegedly were prepared to advise HarperCollins. This being the case, Mr. Langberg has placed himself squarely at odds with the governing rules of professional conduct in New Mexico, which forbid an attorney from serving both as advocate and as witness in his or her client's case (see HarperCollins Opening Disqualification Br. 2-4).

Having created this circumstance, Mr. Langberg cannot, as he now attempts, extricate himself from it by the offer of "withdrawing" his declaration in favor of one from his former law partner. As far as the summary judgment motion is concerned, if Mr. Langberg cares to withdraw his declaration, HarperCollins would have no objection. HarperCollins most certainly would object to the proffer of any new declaration, from Ms. Leslie or anyone else, however, given that the time for such a proffer is long past and the motion has now been fully briefed and is sub judice.

As far as Mr. Langberg's disqualification is concerned, mere withdrawal of the Langberg declaration scarcely suffices to alleviate the ethical bar to Mr. Langberg continuing as counsel if this case proceeds beyond summary judgment. Having alerted HarperCollins to plaintiffs' view that Mr. Langberg is a key fact witness in this case, Mr.

3

Langberg cannot now place his self-interest ahead of his clients' by saying, in essence, "My testimony isn't that important after all."

Indeed, were this case to proceed beyond summary judgment, irrespective of who plaintiffs may actually proffer with respect to the information that allegedly would have been supplied to HarperCollins in response to Mr. Langberg's August 8, 1991 correspondence, HarperCollins would clearly want to depose the author of the letter, Mr. Langberg, on these matters and obtain relevant documents from his files.  Moreover, who other than Mr. Langberg can testify as to what information "[he] would have provided" to HarperCollins, see Langberg Summary Judgment Dec. ¶ 6, in response to his letter?  There would, in these circumstances, be a strong likelihood that Mr. Langberg's testimony on such matters would also be necessary at trial.

The prospect of such testimony implicates the very core of the attorney-witness rule, which operates to "prevent situations in which others might think the lawyer, as witness, is distorting the truth for his client or is enhancing his own credibility as advocate by virtue of having taken an oath as witness."  In re American Cable Pubs., Inc., 768 F.2d 1194, 1196 (10th Cir. 1985).

The Relo Insurance Group case, one of the two cases cited by plaintiffs in support of their withdrawal proposal,

4

is instructive in this regard.[2] In <u>Relo</u>, an attorney for the plaintiff in an insurance fraud case, submitted an affidavit in support of the plaintiff's motion for summary judgment stating that he had received a telephone call during which he was told that certain insurance funds withheld by the defendants represented the repayment of loans by the defendant to the plaintiff insurance company. As the <u>quid pro quo</u> for allowing the attorney to continue as counsel, the court required an agreement from the plaintiff, not only that the attorney would not be called as a witness by the plaintiff, but, more importantly, a stipulation from the plaintiff "for all purposes in th[e] case" that the funds withheld by the defendants did <u>not</u> represent the repayment of loans made by the defendants to the plaintiffs. This was the exact <u>opposite</u> of what the lawyer had originally said in his affidavit.

The underlying reason for the required stipulation is apparent. Had the facts set forth in the attorney's affidavit remained open to dispute, the opposing party would have needed to take the attorney's deposition in order to test his credibility and the veracity of his version of the facts, thereby making the attorney a witness in the case.

---

2. <u>Relo Ins. Group, Inc.</u> v. <u>Salisbury</u>, Civ. No. 93 C 7039, 1994 U.S. Dist. LEXIS 6309 (N.D. Ill. May 13, 1994).

The reasoning of the <u>Relo</u> case requires, at a bare minimum, that if this case proceeds beyond summary judgment, and if the plaintiffs wish to have Mr. Langberg continue as their counsel in this case, he cannot merely renounce his role as a witness.  Plaintiffs must also stipulate that each of the facts alleged in Mr. Langberg's declaration will no longer be asserted by any witness for any purpose.

<u>Caplan</u>,[3] the other case relied upon by plaintiffs in support of their withdrawal proposal, states, in dictum, that a client may decide at a later date "to stipulate [that his attorney] will not testify [] in order to guarantee that he can be her advocate at trial," but is completely distinguishable from the case at bar.  876 F. Supp. at 712.  The attorney subject to the motion for disqualification in that case had merely been identified in a disclosure statement as a "person reasonably likely to have information that bears significantly on the claims involved in the matter."  <u>Id.</u> at 711.  He had neither submitted an affidavit in the case nor requested permission to withdraw it.  <u>See also</u> <u>Freeman</u> v. <u>Vicchiarelli</u>, 827 F. Supp. 300 (D.N.J. 1993) (an attorney whose testimony was the "primary" evidence of his client's claim was precluded from waiving his ethical

---

3. <u>Caplan</u> v. <u>Fellheimer</u>, 876 F. Supp. 710 (E.D. Pa. 1995).

6

obligations under the attorney-witness rule by withdrawing his testimony).

2. **Plaintiffs' Assertion that Mr. Langberg's Declaration Is Uncontested.** In an attempt to bring Mr. Langberg's declaration within the first of two exceptions to the attorney-witness rule in New Mexico -- which applies where the attorney's testimony relates to an uncontested issue (see N.M.R. Prof. Conduct 16-307(A)(1)) -- plaintiffs assert that the statements proffered in Mr. Langberg's declaration are "uncontested." This is an outlandish argument.

Exemplifying this preposterous notion, plaintiffs suggest that Mr. Langberg's assertion that he would have made Carl and Audree Wilson "available for interview" is uncontested. Opp. Br. 12. The uncontested record facts are quite to the contrary. They disclose that both individuals were expressly asked for interviews as sources during preparation of the book and both declined any form of cooperation. See HarperCollins Summary Judgment Br. 12. Virtually every other assertion in the Langberg declaration is, at the least, similarly open to question,[4] thus

---

4. For instance, plaintiffs' assertion that it is uncontested that "Dr. O' Connor's evaluation was whatever it was," Opp. Br. 12, is not only meaningless, it ignores the record fact that that report was not available to HarperCollins prior to publication of the book, see

(continued...)

rendering plaintiffs' attempt to evade the strictures of Rule 16-307 unavailing.

3. **Disqualification Must Be Complete and Immediate.** Plaintiffs contend that the attorney-witness rule applies only to trial and does not mandate disqualification from participation in pre-trial proceedings. Plaintiffs thus argue that even if Mr. Langberg were disqualified from serving as their trial counsel, he should be permitted to represent them in this case up until the date of trial. See Opp. Br. 4-5.

While courts have divided on this issue, the better reasoned approach, as exemplified by Freeman v. Vicchiarelli, 827 F. Supp. 300, 303-04 (D.N.J. 1993), is that "the attorney-witness rule begins to operate as soon as either attorney realizes that a possible conflict may arise" and precludes counsel from participating in all trial and trial-related activities:

> If the attorney-witness rule operated only at the trial stage of litigation as Plaintiff suggests, the policies inherent in [the rule] would be defeated. An attorney facing disqualification at the trial stage might be too anxious to settle a dispute before trial. Conversely, opposing counsel, armed with the knowledge that opposing counsel faces disqualification, might be unwilling to accept an otherwise attractive settlement offer. Finally, allowing an attorney who will

---

4. (...continued)
HarperCollins Summary Judgment Reply Br. 13. The report itself is not even part of the record of this case.

> testify to continue as advocate up to the time of a trial would put [the judge] in the uncompromising position of choosing whether to force the advocate's client to start over with a new attorney on the eve of trial, to bar testimony necessary to decide the merits of the case, or to abrogate [the judge's] duty to apply [the attorney-witness rule]. Such procedural distortions raise the specter of the 'appearance of impropriety' and the possibility of strategic procedural behavior to the detriment of reaching the merits of the case. Early application of the attorney-witness rule is necessary for the smooth operation of adversarial adjudication.

Id. at 304.

This reasoning mandates that, should this case proceed beyond summary judgment, Mr. Langberg should be completely and immediately disqualified from further participation in it.

4. **Ms. Drooz's Participation In This Case.** Mr. Langberg's statement that Ms. Drooz "is not a participant in this case," see Langberg Dec. ¶ 5, is directly contradicted by the fact that Ms. Drooz, per her own summary judgment declaration, negotiated with HarperCollins on plaintiffs' behalf prior to filing the complaint in this suit, see Drooz Dec. ¶¶ 2-6,[5] and indeed <u>signed the complaint</u> that initiated this lawsuit on behalf of plaintiffs Carl and Audree Wilson. See Signature Page of Original Complaint (attachment 1

---

5. As explained in HarperCollins' summary judgment reply brief, such negotiations fall within Rule 408 of the Federal Rules of Evidence and hence are inadmissible as evidence in this case. See HarperCollins Summary Judgment Reply Br. 18-20.

hereto). Accordingly, the relief that is applicable to Mr. Langberg -- disqualification from further participation in this lawsuit -- is equally applicable to Ms. Drooz.

5. **Costs.** Plaintiffs' assertion that HarperCollins has interposed the present motion in order to "disrupt the orderly conduct of this litigation," Opp. Br. 1, is a textbook example of the pot calling the kettle black. Plaintiffs, not HarperCollins, introduced this ethical violation into this case by proffering the Langberg and Drooz declarations.

In view of the clarity of the violation at issue, HarperCollins was compelled to bring the instant motion and to do so immediately. For the reasons cited, HarperCollins does not believe Mr. Langberg can avoid accountability for his actions merely by changing his position in response to this motion. Thus, even were the Court to permit Mr. Langberg to cure his ethical violation by withdrawing his declaration, HarperCollins believes that it should be awarded its attorneys' fees and other costs incurred in having to have filed this motion in the first place.

## CONCLUSION

For the reasons set forth in HarperCollins' summary judgment papers, the Langberg and Drooz declarations are due no weight in the Court's disposition of the pending summary judgment motion. Should, however, that motion be denied,

HarperCollins respectfully requests that Mr. Langberg and Ms. Drooz be disqualified from further involvement as counsel to the plaintiffs, and that HarperCollins be awarded its costs and attorneys' fees incurred in connection with the bringing of this motion.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By *William S. Dixon*
William S. Dixon
Albuquerque Plaza
201 Third Street NW,
Suite 2200
Albuquerque, New Mexico 87103
Telephone: (505) 768-7266

R. Bruce Rich
Katherine J. Daniels
Elizabeth Stotland Weiswasser
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

Attorneys for Defendant,
HarperCollins Publishers Inc.

We hereby certify that a copy of
the foregoing was hand-delivered
to Ernesto Romero and forwarded
via overnight service to Beth Dumas
this 27th day of November, 1995,
at the following addresses:

    Ernesto J. Romero
    3602 Campus Boulevard, NE
    Albuquerque, New Mexico 87106

    Beth Dumas
    Landberg, Cohn & Drooz
    12100 Wilshire Boulevard
    Suite 1650
    Los Angeles, California 90025

**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**

By_____
    William S. Dixon

Case 1:94-cv-00892-JEC-LFG   Document 90   Filed 11/27/95   Page 14 of 14

AUG-26-94 FRI 17:13    HARPER COLLINS          FAX NO. 212 207 7552        P.20
AUG-23-1994  13:31   FROM ALL STAR ATTORNEY SERVICE    TO       12129410235    P.21

1   z.   For punitive damages in an amount to be proven at
2   trial.
3   DATED:   August 3, 1994           LANGBERG, LESLIE & GABRIEL
                                       BARRY B. LANGBERG, ESQ.
4                                      DEBORAH DROOZ, ESQ.
                                       2049 Century Park East, Suite 3030
5                                      Los Angeles, California  90067
                                       (310) 286-7700
6
7
                                       By: _____
8                                              DEBORAH DROOZ
                                            Attorneys for Plaintiffs
9                                         CARL WILSON and AUDREE WILSON

10  DATED:   August 3, 1994           ROMERO LAW FIRM
                                       3602 Campus N.E.
11                                     Albuquerque, New Mexico  87106
                                       (505) 262-2131
12
13
14                                     By: _____
                                              ERNESTO J. ROMERO
15                                          Attorneys for Plaintiffs
                                          CARL WILSON and AUDREE WILSON
16
17
18
19
20
21
22
23
24
25
26
27
28

-17-                              ATTACHMENT 1