UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

------------------------------------x

96 SEP 11 PM 2:19

CARL WILSON, an individual, and      :
AUDREE WILSON, an individual,

                           :

               Plaintiff,

                           :

        v.

HARPERCOLLINS PUBLISHERS, INC.,      :
a Delaware corporation,

               Defendant.      :

Robert M Marsh
CLERK-ALBUQUERQUE

94 Civ. 892 (JC)

------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

    Defendant HarperCollins Publishers, Inc. submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 26(b), 33, 34 and 37, to compel Plaintiffs Carl Wilson and Audree Wilson to respond to HarperCollins' First Sets of Interrogatories and Requests for Production of Documents and for sanctions for their failure to properly respond.

### PRELIMINARY STATEMENT

    Plaintiffs' responses to HarperCollins first set of discovery requests are plagued with improperly asserted objections, evasive answers and flagrant violations of the federal and local discovery rules.  Indeed, plaintiffs have failed to comply with even the most basic requirements of

D.N.M.LR-Cv 26.1(b).[1]  They also failed to follow the instructions in the requests that separate responses be provided for each of the allegedly defamatory statements from the book which, for the convenience of the parties and the Court, were set forth in full in the requests.

Because of the Rule 26.1(b) failure, HarperCollins is forced to attach both the original interrogatories and the responses as separate attachments to this motion to allow the Court to relate the particular requests to the responses.  While this violation of the local rules does not directly relate to the substantive adequacy of the responses or the merits of the objections, it is emblematic of the plaintiffs' cavalier attitude toward their discovery obligations.

The numerous substantive inadequacies in plaintiffs' responses are set forth below.

PROCEDURAL HISTORY

On June 13, 1996, HarperCollins served its First Set of Interrogatories to Plaintiff Audree Wilson, First Set of Interrogatories to Plaintiff Carl Wilson and First Request for Production of Documents to both plaintiffs.  See Attachments A, B and C to HarperCollins Motion To Compel and For Sanctions (hereinafter "Motion") submitted herewith.

---

1.  Pursuant to D.N.M.LR-Cv 26.1(b), plaintiffs were required to either set forth the response or objection in the space provided or quote each interrogatory in full immediately preceding its responses.

2

On July 26, 1996, plaintiffs served responses and objections to the First Set of Interrogatories to Audree Wilson and objections (but no substantive responses) to certain interrogatories propounded to Carl Wilson.  Plaintiffs also served responses to the First Requests for Production of Documents but produced virtually no responsive documents.  <u>See</u> Attachments D, E and F to Motion.

On August 6 and 7, counsel for both sides participated in a lengthy meet-and-confer to discuss numerous deficiencies in plaintiffs' production.  Particular attention was given to the nonresponsiveness of plaintiffs' answers and the inappropriateness of the objections, particularly the "right of privacy" objections.  Copies of the correspondence setting forth the substance of the three hour meet-and-confer are appended to the Motion as Attachments G and H.

As a result of the meet-and-confer, plaintiffs indicated that they would supplement or amend a number of the interrogatory and document responses.  They also agreed to produce additional documents.  To date, plaintiffs have made no effort to supplement Audree Wilson's responses to the interrogatories.  The only supplemental documents that have been produced are copies of plaintiffs' current address books.

Pursuant to a Court Order dated August 19, 1996, plaintiffs were ordered to serve substantive responses to HarperCollins First Set of Interrogatories to Carl Wilson by 7:00

p.m. EST on August 19, 1996.  "Plaintiff Carl Wilson's Amended
Responses to HarperCollins' First Set of Special Interrogatories"
were finally received at 8:55 p.m. EST on August 19.  <u>See</u>
Attachment I to Motion.  Mr. Wilson's responses suffer from many
(if not most) of the same deficiencies discussed during the meet-
and-confer.

It has become apparent that plaintiffs have no
intention of providing responsive answers unless they are
compelled to do so by this Court.

ARGUMENT

I.   <u>PLAINTIFFS' RESPONSES TO THE INTERROGATORIES AND
     DOCUMENT REQUESTS CONCERNING INJURY TO REPUTATION
     AND DAMAGES ARE EVASIVE AND INCOMPLETE</u>

Interrogatory Nos. 1, 6, 10, 12 and 16 to Audree Wilson
and Interrogatory Nos. 1, 6, 8, 9, 11, 13, 14 and 15 to Carl
Wilson and Request Nos. 9 and 26 relate to plaintiffs'
computation and theories of damages and reputational injury.

A.   <u>Injury to Reputation</u>

Interrogatory No. 1 is identical for both plaintiffs.
It requests the identities of persons who have formed a
diminished opinion of plaintiffs because of the publication of
the book.

Audree Wilson responded to Interrogatory No. 1 as
follows:  "Plaintiff cannot provide a complete answer because
Plaintiff does not know the names of all of the persons who read
the Book.  Research of damage to reputation witnesses is not

4

complete."  Carl Wilson's initial response was identical.  Mr.
Wilson's "amended" response reads as follows:  "Plaintiff does
not know the names of all the persons who read the Book.
Plaintiff further responds, without waiver of the attorney work
product protection, that an outside consultant is doing research
on that subject, and the research is not complete."

With respect to documents on reputational injury, in
response to Document Request No. 26, plaintiff stated: "As
regards to general damages for harm to reputation, Plaintiffs are
not in possession, custody or control of any responsive
documents.  As discovery continues, however, documents from third
party sources may be obtained."

Five years after the publication of the book and two
year after the filing of this lawsuit, it is incredible that
plaintiffs are unable to identify one single person who has
formed a diminished opinion of them as a result of the
publication of the book or one single document evidencing harm to
their reputations.[2]  If at this late stage, plaintiffs can
identify no specific persons or documents concerning injury to
reputation, plaintiffs should so state in a definitive and final
answer to Interrogatory No. 1 and Document Request No. 26 and

---

2.  Pursuant to Fed. R. Civ. P. 26(a)(1)(C), such information
should have been readily available to plaintiffs at the time the
action was commenced or very soon thereafter -- notwithstanding
the parties' mutual decision to bifurcate this case into phases
for purposes of conducting formal discovery.

thereafter be precluded from relying on any such documents or testimony of or concerning such persons at trial.

      B.    <u>Proximate Cause And Damages</u>

          Interrogatory No. 6 to Audree Wilson, Interrogatory Nos. 8 and 9 to Carl Wilson and Document Request Nos. 16 and 19 request specific information and documents concerning plaintiffs' allegations that the challenged passages proximately caused injury and damages to them.  Plaintiffs are asked to state the basis for their assertion that the book proximately caused injury and damages to them.  They are also asked to identify all evidence in support of their responses and identify all persons with knowledge concerning their allegations.

          In his response to Interrogatory Nos. 8 and 9, Mr. Wilson states:  "The alleged defamatory statements carry with them a defamatory meaning.  The general damages sought naturally flow from the defamatory statements."  This appears to be an elusive way of saying that the sole basis for Mr. Wilson's allegations as to proximate cause of injury and damages are the statements themselves.  If this is what the elliptical response means, Mr. Wilson should be compelled to say so.  Mr. Wilson cites no evidence (other than perhaps the statements themselves) and no persons with knowledge concerning his claim of "general damages."  Thus, he fails to respond to the second portion of the interrogatory altogether.  Mr. Wilson should be compelled to give a complete and nonevasive answer to the entire interrogatory.

In response to Interrogatory Nos. 8 and 9, Mr. Wilson makes a similar elusive statement with respect to his claim of emotional distress:  "Plaintiff's claim for emotional distress damages is supported by the emotional distress he suffered."  This statement is absolutely breathtaking in its obliqueness and circuity.  It is also completely nonresponsive to the interrogatory.  Mr. Wilson should be compelled to state the basis for his allegations that the publication of the book proximately caused him emotional injury and damages.  Mr. Wilson's response does identify persons with knowledge concerning his allegations of emotional injury, but he fails to respond to the interrogatory's request for identification of the evidence he believes supports those allegations.  Again, he should be compelled to provide a complete response to all three aspects of the interrogatory.

Audree Wilson's answer to Interrogatory No. 6 concerning proximate cause and damages is also evasive.  She states:  "The statements charge me with cruelty toward my son.  In many states it is a crime for a parent to witness flagrant child abuse and not try to intercede.  That is a terrible thing for a mother to do."  In the context of the interrogatory, this oblique statement would seem to mean that the sole basis for her allegations that the statements in the book proximately caused her injury and damages are the statements themselves.  If so, she should be compelled to state so in response to the interrogatory.

Like Mr. Wilson, Ms. Wilson neglects to respond to the part of the interrogatory asking her to identify evidence of and persons with knowledge concerning her allegations as to proximate cause and damages.  If there is no such evidence (other than the statements themselves) and there are no persons with such knowledge, she should be compelled to say so.

Under Fed. R. Civ. P. 33(b), HarperCollins is entitled to full, nonevasive responses to the interrogatories concerning proximate causation and damages.  HarperCollins is also entitled to any and all documents on these fundamental subjects.  So far, the only documents that have been produced are "gig sheets" for the years 1988-1995 which purportedly reflect Mr. Wilson's concert revenues.  This is surprising given that his claim for damages goes far beyond allegedly lost concert revenues.  For example, he also claims to have lost merchandizing revenue, sponsorship revenue and record sales yet has produced no documents whatsoever on these subjects.

C.  <u>Pecuniary Losses</u>

Interrogatory No. 10 to Audree Wilson and Interrogatory No. 11, 13, 14, 15, and 16 to Carl Wilson request specific information concerning "pecuniary loss" as an element of damages.

Audree Wilson responds "that she is not seeking special damages (i.e. lost profits etc)."[3]  If this evasive response

---

3.  "Special damages" is a term of art in libel jurisprudence which is arguably more narrow than pecuniary loss.

8

means that she is not claiming any pecuniary loss and as element of damages, HarperCollins is entitled to that unequivocal and unambiguous response to Interrogatory No. 10.

Carl Wilson's responses to Interrogatory Nos. 11, 13, 14, 15 and 16 are more responsive than Ms. Wilson's but still do not provide all of the information requested.  Further, because they provide specific information concerning merchandizing revenue, record royalties and sponsorship licenses, they also raise serious questions as to why documents concerning these matters have not been produced to HarperCollins.  Such documents are expressly requested in Document Request No. 26 and, at the very least, Mr. Wilson should be compelled to produced whatever it was he relied on to respond to the interrogatories.

D.  Financial Records

Interrogatory Nos. 12 and 16 to Audree Wilson, Interrogatory Nos. 18 and 21 to Carl Wilson and Document Request No. 9 request information concerning plaintiffs' finances and the finances of the Beach Boys.

Audree Wilson refused to respond to Interrogatories 12 and 16 claiming that the information requested is not relevant and violates of her "right to privacy."[4]  Neither plaintiff produced documents concerning their finances.

---

4.  The inappropriateness of this objection is discussed in Section II infra.

If Ms. Wilson is not claiming that the publication of the book caused any change in her financial status, then HarperCollins is entitled to that response because it constitutes circumstantial evidence that her reputation has not been damaged. Certainly, evidence that her financial situation has been enhanced since the publication of the book is significant evidence that the book had no significant impact upon her reputation. Further, information concerning her financial affairs is relevant because it could lead to admissible evidence concerning causes for her alleged "emotional distress" other than the publication of the book. Thus, Ms. Wilson should be compelled to provide responses.

Carl Wilson is clearly claiming that the book has caused a diminution in his income and the income of the Beach Boys. HarperCollins is entitled to show that the book had no impact on Mr. Wilson or the Beach Boys' finances as compared to the preceding 10 years. Accordingly, he should be compelled to produce all documents in his possession or control that are responsive to Request No. 9.[5]  Mr. Wilson's effort to selectively produce only "gig sheets" for the years 1988-1995 is totally unacceptable.

-------------------------

5.  The notion that Mr. Wilson is not in a position to produce documents in the possession of his accountants and Brother Records and Brother Tours (the corporations under which he and the other Beach Boys conduct their business) is absurd.

10

II.   <u>PLAINTIFFS' FAILURE TO RESPOND TO DISCOVERY REQUESTS ON THE
BASIS OF ASSERTIONS OF A RIGHT OF PRIVACY ARE COMPLETELY
INAPPROPRIATE</u>

Plaintiffs have no basis whatsoever to refuse to respond to interrogatories and produce documents based on assertions of a "right to privacy." Having placed their reputations, the veracity of statements about their private lives and their emotional and financial well-being directly at issue, they cannot now attempt to hide behind a veil of "privacy" with respect to these matters. Accordingly, they should be compelled to provide complete and responsive answers to Interrogatory Nos. 2, 12, 15 and 16 to Audree Wilson, Interrogatory Nos. 2, 10, and 16 to Carl Wilson and produce all documents responsive to Requests Nos. 1, 2, 3, 4, 5, 6, 7, 8, 21, 23, 24, and 26.

III.  <u>PLAINTIFFS' RESPONSES TO MANY OF HARPERCOLLINS' DISCOVERY
REQUESTS ARE EVASIVE</u>

Plaintiffs' responses to many of the interrogatories and document requests are purposefully evasive. The evasive responses provided in response to the interrogatories and requests on proximate cause and damages are discussed above. In addition to these, there are a number of instances in which plaintiffs expressly reinterpret the interrogatories and requests in a manner that substantially narrows or otherwise significantly changes them in scope. This practice is not appropriate under the Federal Rules of Civil Procedure. Plaintiffs are not entitled to unilaterally decide what questions they wish to answer. Rather, they must comply with the requirement of the

rules and respond fully and completely to the requests as written.

The evasive responses include:  Carl Wilson's "amended" responses to Interrogatory Nos. 5 (misinterprets request for a statement of the basis for his allegations as to falsity and fails to identify evidence of same),[6] 6 (same), 7 (same), 8 (see discussion in Section 1(a) _supra_, 9 (same), 13 (same), 14 (same), 15 (same), 16 (same), and 17 (answers a different question); Audree Wilson's responses to Interrogatory Nos. 2 (lists only physicians as opposed to "health care providers"), 3 (lists "witness and potential witnesses" as opposed to "persons with knowledge"), 4 (same), 5, 6, 10 and 17; and plaintiffs responses to Document Request Nos. 9, 10, 11, 12, 13, 15, 17, 18, and 21. Plaintiffs should be compelled to provide complete responses to the interrogatories and produce documents responsive to the document requests as written -- not as misinterpreted by plaintiffs.

---

6.  This interrogatory also mischaracterizes what Ms. Daniels explained to Ms. Dumas during their meet-and-confer.  Ms. Daniels told Ms. Dumas that the interrogatories requested three types of information:  (i) a statement of the basis for plaintiffs' allegations; (ii) identification of all evidence in support thereof; and (iii) identification of all persons with knowledge concerning the allegations.  Ms. Daniels even gave examples of how one might go about stating the basis for allegations of this nature.

NYFS08...:\60\51660\0063\2536\MOT81996.M30

## IV.  PLAINTIFFS HAVE WAIVED THEIR OBJECTIONS TO A NUMBER OF THE INTERROGATORIES

Providing responses to discovery requests notwithstanding an objection results in waiver of the objection. See Norma Russell v. Yamaha Motor Co., et al., No. 91-479 (JC/WWD), slip op. at 4, 10 (D.N.M. Nov. 8, 1991).

Audree Wilson has waived her objections to Interrogatory Nos. 2, 6, 10, 11, 15 and 17 because those objections are accompanied by responses.  Carl Wilson has waived the objections asserted in his responses to Interrogatory Nos. 2, 5, 6, 7, 11, 16, 17, 18, 19 and 23 because those objections are accompanied by responses.  Both plaintiffs have waived their objections to Document Request Nos. 3, 4, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, and 26 because those objections are also accompanied by responses.

Although plaintiffs' counsel represented during the meet-and-confer that when plaintiffs provided a response "notwithstanding" their objections the response was complete, this is not apparent from the written responses.  To the extent that responsive documents and interrogatory responses have been withheld, their immediate production should be compelled. Otherwise, plaintiffs should be compelled to clarify their responses so that it is clear that a complete response has been provided.

NYFS08...:\60\51660\0063\2536\MOT81996.M30

V.   PLAINTIFFS' BROAD, CONCLUSORY OBJECTIONS ARE INAPPROPRIATE

The assertion of broad, conclusory objections without specifying why such objections apply to the requests is not permissible.  <u>Russell</u> v. <u>Yamaha</u>, No. 91-479 (JC/WWD), slip op.at 5.

Plaintiffs assert broad, conclusory objections -- namely "vague", "overbroad," "harassing," "confusing," "not relevant," "improper subject of discovery" -- in response to Interrogatory Nos. 2, 6, 10, 11, 12, 13, 15 and 17 for Audree; Interrogatory Nos. 2, 3 and 23 for Carl; and Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26 and 27.  In each instance, they fail to explain the reason for the objection, as required by the Federal Rules.  Plaintiffs should be ordered either to respond to each of the requests that it has refused to answer on the basis of a conclusory objection(s) or, alternatively, state the reason for the objections so the Court can determine whether there is any merit to the objection.  It is HarperCollins' view that plaintiffs' objections are wholly without merit.

VI.  HARPERCOLLINS IS ENTITLED TO DISCOVERY AS TO AUDREE WILSON'S USE (OR LACK OF USE) OF ALCOHOL

Plaintiffs objects to the various interrogatories which request information concerning Audree Wilson's use or abuse of alcohol or lack thereof on the grounds that "the Court ruled that statements purporting to detail Audree Wilson's use or abuse of alcohol are not actionable information."

14

HarperCollins believes it is entitled to discovery on this issue -- notwithstanding the Court's ruling that the statements in the book concerning Audree Wilson's use of alcohol are not, as a matter of law, capable of defamatory meaning -- because the requested information may lead to admissible evidence concerning Ms. Wilson's ability to accurately recall the episodes of abuse reported in the statements that are still at issue. Such information may also provide an explanation for her behavior in standing by in the face of Murry Wilson's abuse of their children.  The requested information may also lead to admissible evidence concerning potential sources for her alleged emotional distress other than the publication of the book.  Thus, plaintiffs' should be compelled to respond.

VII.  <u>PLAINTIFFS' HAVE WAIVED THEIR CLAIMS OF ATTORNEY CLIENT PRIVILEGE BY FAILING TO PRODUCE A PRIVILEGE LOG</u>

Plaintiffs have waived their claims of attorney-client privilege by failing to describe the nature of the documents, communications or things not produced in a manner that will enable HarperCollins to assess the applicability of the privilege as required by Fed. R. Civ. P. 26(b)(5).

Fed. R. Civ. P. 26(b)(5) requires that:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable

other parties to assess the applicability of
the privilege.

In explaining this provision, the Advisory Committee warns that
"[a] party must notify other parties if its withholding materials
otherwise subject to disclosure under the rule . . .  because it
is asserting a claim of privilege. . . . To withhold materials
without such notice is contrary to the rule, subjects the party
to sanctions under Rule 37(b)(2) and may be viewed as a waiver of
the privilege."  See also Cunningham v. Connecticut Mut. Life
Ins., 845 F. Supp. 1403, 1408 (S.D. Cal. 1994) ("A failure to
properly assert a privilege, as a matter of federal procedure,
can result in a waiver of the privilege.").

In response to a number of document requests,
plaintiffs indicate that they have unspecified documents that
respond and are privileged, but they have not identified which
documents they are or provided nonprivileged information
sufficient to enable HarperCollins to determine whether the
privilege is properly asserted because, in plaintiffs' words, "it
would be unduly burdensome for Plaintiffs to create a privilege
log."  See Response to Document Request No. 27.

The law on this subject could not be clearer.  The
burden of proving the attorney-client privilege rests on the
party asserting that privilege.  Peat, Marwick, Mitchell & Co. v.
West, 748 F.2d 540, 542 (10th Cir. 1984), cert. dismissed, 469
U.S. 1199 (1985).  A general claim is insufficient to establish
the privilege.  See e.g. Marx v. Kelly, Hart & Hallman, P.C., 929

16

F.2d 8, 12 (1st Cir. 1991) (the assertion of a privilege "must be
accompanied by sufficient information to allow the court to rule
intelligently on the privilege claim); <u>Davis</u> v. <u>Fendler</u>, 650 F.2d
1154, 1160 (9th Cir. 1981) (blanket privilege is improper).  As
the court noted in <u>Eureka Fin. Corp.</u> v. <u>Hartford Accident &</u>
<u>Indem. Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991):

> Although it may be time-consuming to
> specifically assert the attorney-client . . .
> privilege in a document intensive litigation,
> the courts nevertheless require such specific
> identification.  Because privileges impede
> full and free discovery of the truth, the
> assertion of a privilege such as attorney-
> client is strictly construed.  If the
> privilege is worth protecting, a litigant
> must be prepared to expend some time to
> justify the assertion of the privilege.
> (Citations omitted).

Plaintiffs made no effort to identify any of the
responsive documents purportedly protected by the attorney client
privilege (other than those listed on the "privilege" log created
during the first phase of discovery).  They have failed to
indicate how many additional documents they are not producing in
this phase and have declined to provide any information about the
documents because it would be "too burdensome."  This Court
should find that plaintiffs' failure to provide sufficient
information regarding the asserted privilege amounts to a waiver
of the privilege and all responsive documents should be produced.

17

VIII.   HARPERCOLLINS IS ENTITLED TO RECOVER ITS REASONABLE
        EXPENSES, INCLUDING ATTORNEY'S FEES CAUSED BY
        PLAINTIFFS' FAILURE ADEQUATELY TO RESPOND TO
        HARPERCOLLINS' DISCOVERY REQUESTS

        It is elemental that discovery relating to damage to
reputation is the very essence of a defamation case.  Equally
elemental is the notion that plaintiffs who have placed their
reputations and the veracity of statements concerning their
private lives directly at issue cannot then refuse to produce
relevant information by claiming a "right of privacy."  No
reasonable party could assert this objection and provide evasive
responses to requests concerning injury to reputation, causation
and damages without expecting to be compelled to respond.

        Fed. R. Civ. P. 37(a)(4)(A) provides, in pertinent
part, as follows:

> If the motion [to compel] is granted or if the
> disclosure or requested discovery is provided after the
> motion was filed, the court shall, after affording an
> opportunity to be heard, require the party . . . whose
> conduct necessitated the motion or the party or
> attorney advising such conduct or both of them to pay
> to the moving party the reasonable expenses incurred in
> making the motion, including attorney's fees, unless
> the court finds that the motion was filed without the
> movant's first making a good faith effort to obtain the
> disclosure or discovery without court action, or that
> the opposing party's nondisclosure, response, or
> objection was substantially justified, or that other
> circumstances make an award of expenses unjust.

Under this provision, "no bad faith is required; even negligent
failures to allow reasonable discovery may establish cause for
imposing sanctions under Rule 37." Eureka Fin. Corp. v. Hartford
Accident & Indem. Co., 136 F.R.D. 179, 186 (E.D. Cal. 1991).  See

18

<u>Coane</u> v. <u>Ferrara Pan Candy Co.</u>, 898 F.2d 1030, 1032 (5th Cir. 1990) (failure to provide discovery need not be willful in order to trigger sanctions).

As shown by the Certificate of Compliance filed by counsel in conjunction with this Motion, HarperCollins made a good faith effort to secure the requested discovery without the Court's intervention but was unable to do so.  In addition, the authorities cited by HarperCollins demonstrate that there is no credible justification for plaintiffs' failure to respond fully to HarperCollins' requested discovery.  Under these circumstances, Rule 37 requires the Court to enter an order against either plaintiffs' or their counsel or both "to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees."  <u>See</u> <u>Eureka Fin. Corp.</u>, 136 F.R.D. at 186 (ordering party who "made blanket claim of privilege which completely contravenes the well settled requirements for a valid assertion of privilege" to pay expenses incurred by the party filing the motion to compel).

CONCLUSION

For the foregoing reasons, HarperCollins requests that this Court enter an Order compelling plaintiffs Carl and Audree Wilson immediately to provide full, nonevasive responses to HarperCollins first sets of interrogatories and documents requests and ordering plaintiffs, or their counsel, or both, to pay HarperCollins' reasonable expenses, including attorney's

19

fees, caused by the failure to provide such responses in the first instance.

Dated:  August 23, 1996

RODEY, DICKASON, SLOAN,
AKIN & ROBB, P.A.


By _William S. Dixon /RD_
     William S. Dixon

Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: (505-765-5900)

R. Bruce Rich
Katherine J. Daniels
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

Attorneys for Defendant,
HarperCollins Publishers, Inc.

We hereby certify that a copy
of the foregoing was hand-delivered
to Ernesto Romero and forwarded
via overnight service to Beth Dumas
this 23 th day of August,
1996, at the following addresses:

    Ernesto J. Romero
    3602 Campus Boulevard, NE
    Albuquerque, New Mexico 87106

    Beth Dumas
    Landberg, Cohn & Drooz
    12100 Wilshire Boulevard
    Suite 1650
    Los Angeles, California 90025

WEIL, GOTSHAL & MANGES, LLP

By _____
    Katherine J. Daniels

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORMA RUSSELL, Individually and
as parent and next friend and
on behalf of MICHAEL DEVILLE,
a minor, MARTHA DEVILLE, a
minor, and SEIRRIA COBURN,
a minor,

       Plaintiff,

vs.                           Civ. No. 91-479 JC/WWD

YAMAHA MOTOR CO., LTD.,
(YAMAHA HATSUDOKI K.K.), a
Japanese corporation, and
YAMAHA MOTOR CORP., U.S.A.,
a California corporation,

       Defendants.

ENTERED ON DOCKET
11-8-91

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's First

Motion to Compel Production of Documents and Answers to

Interrogatories from Defendant Yamaha Motor Corp., U.S.A., filed

August 29, 1990. Plaintiff moves this Court to compel Yamaha

Motor Corp., U.S.A. (Yamaha-USA) to produce documents pursuant to

requests 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17,

19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 37, 38,

39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54,

56, and 57 of Plaintiff's First Request for Production of

Documents to Yamaha Motor Corp., U.S.A., and to fully answer

interrogatories 2, 3, 4, 5, 14, 16, 17, 18, 21(b), 21(c), 21(f),

and 21(g) of Plaintiff's First Set of Written Interrogatories to

Yamaha Motor Corp., U.S.A.  Plaintiff also asks for an award of

attorney's fees and costs incurred in making and pursuing this motion to compel discovery.

I.   BACKGROUND

Plaintiff Michael DeVille, a minor, was driving a Yamaha three-wheeled all terrain vehicle (ATV) with plaintiff Seirria Coburn, a minor, as a passenger.  The ATV flipped over severing Seirria's left arm and hand above the wrist.  Michael took Seirria to the family home where plaintiff Martha DeVille, a minor, saw Seirria's condition.

Plaintiff is suing defendants for product liability, negligence, breach of warranty, intentional and negligent infliction of emotional distress, and for punitive damages. Plaintiff bases her case on defendants' ATV design, manufacturing, testing, marketing, advertising, sales, warning, and distribution as well as on defendants' failure to recall its ATV's.  Yamaha USA raises as affirmative defenses contributory or comparative fault, abuse or misuse of the product, failure to notify of defects, absence of privity, and if applicable statute of limitations or alteration of product or improper maintenance. Yamaha Motor Co., Ltd. has not filed an answer since it has a pending motion to dismiss.

II.  DISCUSSION

A.  YAMAHA-USA'S GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION

Plaintiff contests Yamaha-USA's General Objections One and Four to plaintiff's first request for production of documents.

General Objection One reads in pertinent part:

> "1.  The definition of 'ATV' is objected to in that it includes four-wheeled all terrain vehicles and cycles and thereby results in an overly broad request and undue burden. Information pertaining to such vehicles is not relevant to the issues in this litigation and to the extent that it may be claimed to be marginally relevant, the burden of responding thereto outweighs any relevance. Information called for by such an overly broad request is not reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff's Exhibit 2 at 2 (attached to plaintiff's First Motion to Compel). Discovery regarding similar models is permitted in products liability cases unless pertinent differences are demonstrated. Culligan v. Yamaha Motor Corp., U.S.A., 110 F.R.D. 122, 126 (S.D.N.Y. 1986). Yamaha-USA does not explain why the term "ATV" is unacceptable except to say that a three-wheeled ATV was involved in this particular accident. Plaintiff, on the other hand, produced a deposition by a Yamaha employee who states that the handling and riding characteristics of a three-wheeled and four-wheeled vehicle are basically same. Exhibit E (attached to Reply Brief of Plaintiff in Support of Motion to Compel (filed Oct. 4, 1991)). Since a four-wheeled ATV is similar in a pertinent way to a three-wheeled ATV, the term "ATV" should include four-wheeled ATV's. Plaintiff's argument that "ATV" should include motorcycles, however, is meritless.

General Objection Four reads in pertinent part:

> "4.  To the extent that any request inquires about 'all', [sic] 'each' or 'every', [sic] the request is objected to as being overly broad and unduly burdensome.  It is

impossible to represent, even after a
reasonably diligent search, that 'all', [sic]
'each' or 'every' document or thing falling
within a description can be or has been
located.  Documents may be kept in myriads of
locations and files.  Many people have
handled the documents and they have been
moved frequently and may have been arranged,
rearranged or reordered.    Documents may have
been lost or may have been part of materials
disposed of in accord with the record
retention policy.  Therefore, this defendant
cannot warrant or represent that it has
produced 'all', [sic] 'each' or every [sic]
document or thing of a type requested, only
that it has produced those which could be
located after a reasonably diligent search.
Any further requirement is objected to as
unduly burdensome."

Exhibit 2 at 3 (attached to plaintiff's First Motion to Compel).

An objection accompanied by a willingness to respond results in

the waiver of the objection.  See Meese v. Eaton Mfg. Co., 35

F.R.D. 162, 166 (N.D. Ohio 1964).  In essence, Yamaha-USA objects

to the use of the words "all," "each," and "every" in the

requests for production while conceding that it will respond to

those requests pursuant to a reasonably diligent search.  Thus,

Yamaha-USA's objections in the face of a willingness to respond

results in the waiver of the objections.

Moreover, Yamaha-USA is obligated to respond to discovery to

the "fullest practicable extent" by making reasonable inquiries

prior to filing discovery responses.  United States v. Proctor &

Gamble Co., 356 U.S. 677, 682 (1958) (citing Hickman v. Taylor,

329 U.S. 495, 501 (1947)); National Ass'n of Radiation Survivors

v. Turnage, 115 F.R.D. 543, 556 (N.D. Cal. 1987).  Thus, a

reasonably diligent search for documents by Yamaha-USA is

4

required.  General Objection Four, therefore, reiterates Yamaha-USA's duty to conduct reasonably diligent searches for documents.

B.  THE REQUESTS FOR PRODUCTION AND INTERROGATORIES

1.  REQUEST 1

Request 1 asks for all documents regarding the testing, development, and/or evaluation of all Yamaha three-wheeled ATV's. Yamaha-USA objects to this request as being vague, ambiguous, indefinite, overly broad, and irrelevant.  Yamaha-USA then states that plaintiff's counsel has already received the requested documents in previous litigation.

Unsupported or clarified general objections such as Yamaha-USA's vagueness, ambiguous, indefinite, overly broad, and irrelevant objections are impermissible.  See White v. Beloginis, 53 F.R.D. 480, 481 (S.D.N.Y. 1971).  Moreover, the requesting party is entitled to review documents in the opposing party's control even if the requesting party has those documents if a subsequent review would be helpful to the requesting party.  See Federal Deposit Ins. Corp. v. Renda, 126 F.R.D. 70, 72 (D. Kan. 1989).  Requesting documents discovered in prior litigation to determine which documents were retained by the opposing party is a legitimate reason for ordering discovery in the subsequent suit.  See Weiner v. Bache Halsey Stuart, Inc., 76 F.R.D. 624, 626 (S.D. Fla. 1977).

In this case, plaintiff states that she has received documents from Yamaha-USA for the last seven years in a piecemeal manner.  According to plaintiff, a complete set of documents at

this time would aid in determining if the documents plaintiff's counsel have are incomplete or not.  Plaintiff's rationale for wanting documents received in previous litigation is similar to that propounded in Weiner.  Thus, plaintiff should be allowed to discover the documents requested in request 1.

    2.   REQUEST 3.

Request 3 asks for all documents regarding the testing of ATV's manufactured by Honda, Yamaha, or Suzuki.  Yamaha-USA responded by stating that it has none in its possession other than that already given to plaintiff's counsel in previous litigation.  Fed. R. Civ. 34(a) allows production of tangible things "which are in the possession, custody or control of the party upon whom the request is served."  Yamaha-USA does not state that it lacks control or custody of the requested documents.  Therefore, Yamaha-USA's response that it does not possess the requested documents is evasive.  Moreover, for the reasons discussed supra, plaintiff is entitled to the requested documents although Yamaha-USA claims they were produced to plaintiff's counsel in prior litigation.  Yamaha-USA must respond to request 3.

    3.   REQUESTS 4, 14, 27, 45, 50, 56, AND 57, and
              INTERROGATORIES 17, 18, AND 21(g)

Yamaha-USA responded to requests 4, 14, 27, 45, 50, 56, and 57 and interrogatories 17 and 18 with unsupported or clarified broad conclusory objections.  Those kind of objections are impermissible in discovery.  The Court notes also that

Yamaha-USA further responded to request 45 by mentioning a possible re-examination of the request.  Such a response is nonresponsive.  Yamaha-USA must fully respond to requests 4, 14, 27, 45, 50, 56, and 57, and interrogatories 17, 18, and 21(g).

　　　　4.　REQUESTS 5, 6, AND 8.

Yamaha-USA responded to requests 5, 6, and 8 by saying that it had already provided plaintiff's counsel with the documents in prior litigation.  For the same reasons discussed pursuant to request 1, supra, plaintiff is entitled to the requested materials although they were allegedly produced in prior litigation.  Thus, Yamaha-USA must respond to requests 5, 6, and 8.

　　　　5.　REQUESTS 7, 10, 12, AND 43.

Yamaha-USA responded to requests 7, 10, 12, and 43 by stating that it was not in possession of the requested documents. As noted, supra, stating that one is not in "possession" of requested documents is insufficient under Fed. R. Civ. P. 34(a) to constitute a valid objection.  Consequently, Yamaha-USA must respond to requests 7, 10, 12, and 43.

　　　　6.　REQUESTS 9, 13, 20, 23, 26, 46, 47, 48, 51, 52, 53, AND 54.

Yamaha-USA responded to requests 9, 13, 20, 23, 26, 46, 47, 48, 51, 52, 53, and 54 by making unsupported or clarified objections and asserting that the documents had been previously provided to plaintiff's counsel in prior litigation.  The above objections to requests 9, 13, 20, 23, 26, 46, 47, 48, 51, 52, 53,

and 54 are without merit as discussed **supra**.   Yamaha-USA must respond to requests 9, 13, 20, 23, 26, 46, 47, 48, 51, 52, 53, and 54.

### 7.   REQUEST 11

Request 11 asks for all documents regarding Yamaha employee or contract employee injuries on Yamaha ATV's.   Yamaha-USA responded by saying it was not in possession of the requested documents and that plaintiff's counsel had deposition transcripts from another case.   Yamaha-USA's lack of possession objection is without merit.   **See supra.**   However, plaintiff's argument that documents produced in previous litigation are needed in this case because there is doubt whether all of the requested documents had been produced before does not apply to the deposition transcripts.   The deposition transcripts are a knowable quantity. Yamaha-USA should, therefore, produce all of the requested documents in its control and custody except for the deposition transcripts.

### 8.   REQUEST 15

Request 15 asks for all documents concerning the accident ATV.   Yamaha-USA responded by saying it would provide plaintiff a copy of the Warranty Registration, Dealer Invoice, and Import Documents, if available, once the accident ATV was sufficiently identified.   Yamaha-USA has since provided plaintiff a copy of the Warranty Registration.   Yamaha-USA does not indicate why it did not also provide the Dealer Invoice and Import Documents.   Thus, Yamaha-USA is compelled to produce the

Dealer Invoice and Import Documents.

    9.   REQUEST 16

    Request 16 asks for all documents, videotapes or other items regarding research studies or information relating to the effectiveness or non-effectiveness of product warnings.  Yamaha-USA objected to the request by asserting that it was unduly burdensome, overly broad, and irrelevant, because the request was not limited to the subject ATV or to three-wheeled ATV's.  A request for discovery is burdensome when the burden to produce outweighs the benefit of discovery of the documents.  **See Rich v. Martin Marietta Corp.**, 522 F.2d 333, 343 (10th Cir. 1975).  Yamaha-USA has not shown why the balance between burden and benefit should tip in favor of burden.  Moreover, Yamaha-USA does not explain how the request is "overly broad."  Yamaha-USA's objections based on undue burden and over broadness are without merit.

    "[R]elevancy is interpreted more broadly during discovery than at trial."  **Centurion Industries, Inc. v. Warren Steurer & Assoc.**, 665 F.2d 323, 326 (10th Cir. 1981).  Under Fed. R. Civ. P. 26, information is "relevant" if it is reasonably calculated to lead to the discovery of admissible evidence.  **United States v. Security and Trust Co.**, 661 F.2d 847, 851 n. 6 (10th Cir. 1981).  The effectiveness or noneffectiveness of product warnings in general may be applicable to the issue of ATV safety, an issue of primary importance in this case.  Thus, discovery of information on the effectiveness or noneffectiveness of product

warnings is reasonably calculated to lead to the discovery of admissible evidence.  Request 16 is, therefore, relevant.  For the above reasons, Yamaha-USA must respond to request 16.

      10.   REQUESTS 17, 19, AND 22

      In response to requests 17, 19, and 22, Yamaha-USA states that it is not aware of any such documentation, does not believe that it exists, or has no document fitting the description.  Those are adequate responses.  Thus, Yamaha-USA need not respond to requests 17, 19, and 22.

      11.   REQUEST 24

      Request 24 asks for copies of all hang tags provided with Yamaha ATV's.  Yamaha-USA objects on several grounds to this request, but then states that without waiver of the objections, it will provide copies of hang tags for the ATV model at issue. A party opposing discovery cannot reserve the right to object and respond to a request for production at the same time.  See Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 617 (5th Cir. 1977); W. R. Grace & Co. v. Pullman, Inc., 446 F.Supp. 771, 775 (W.D. Okla. 1976).  In that situation, the response serves to waive the objections.  Id.

      Because Yamaha-USA has agreed to produce some of the documents requested, Yamaha-USA's objections are waived.  Yamaha-USA's production is incomplete, however.  The scope of discovery includes all of Yamaha's three- and four- wheeled ATV's.  See supra discussion of General Objection One.  The production must,

therefore, include hang tags for all of Yamaha's three- and four-wheeled ATV's.

12.   REQUEST 25.

Yamaha-USA raises some general objections to request 25 but then indicates that it will produce materials mailed to past purchasers in January and October 1988.  Yamaha-USA has waived its objections by agreeing to produce some documents.  Yamaha-USA also mentions a booklet entitled "Tips for the ATV Rider/Off-Road Practice Guides," the owner's manual, and the owner's warranty guide in its response, but does not state that it will produce those documents.  Yamaha-USA will also produce those additional documents.

13.   REQUEST 28

Yamaha-USA objects to request 28 because it asks for documentation on four-wheeled ATV's.  As previously discussed, four-wheeled ATV's are proper subjects of discovery in this case. Accordingly, Yamaha-USA must respond to request 28.

14.   REQUEST 29, INTERROGATORIES 4 AND 5.

Yamaha-USA responded to request 29 and interrogatories 4 and 5 by noting that it either had no current awareness of a document or current knowledge of information sought.  Those are acceptable responses.  Yamaha-USA need not respond further to request 29 and interrogatories 4 and 5.

15.   REQUESTS 30, 31, 32, 38, 40, 41, 42, AND 44

Requests 30, 31, 32, 38, 40, 41, 42, and 44 ask for documents in the possession of or created by certain persons.

Yamaha-USA responds by stating those persons are not its employees and thus, Yahama-USA cannot produce the requested documents.  Whether those persons are employees of Yamaha or not is not the issue.  The issue is whether Yamaha-USA has possession, custody or control of the requested documents.  In fact, if a responding party can obtain documents possessed by third persons upon request, those documents are considered to be under that party's control.  **See Holland Am. Merchants Corp. v. Rogers**, 23 F.R.D. 267, 269 (S.D.N.Y. 1959).  Yamaha has not shown that the requested documents were not in its possession, custody or control, therefore, Yamaha-USA must respond to request 30, 31, 32, 38, 40, 41, 42, and 44.

16.   REQUEST 33

Request 33 asks for JIS standards referred to in connection with the design of the YTM 125.  Yamaha-USA responded by asserting that it is not involved in the design of the subject ATV and has no such information within its possession, custody or control.  This response is adequate.  Yamaha-USA need not respond to request 33.

17.   REQUEST 37.

Request 37 asks for documents or items related to attempts at YMC to computer model ATV's.  Yamaha-USA makes some general objections, then states without waiver of the objections that Yamaha-USA provided to plaintiff's counsel in prior litigation the only copy of computer modeling of any ATV.  The general objections are waived by the fact that Yamaha-USA also

12

responds to the request.  Since Yamaha-USA's response refers to
only one specific item, the one copy of computer modeling,
plaintiff's reason for wanting production of documents or items
from previous suits, i.e., the risk of missing items or documents
from prior production, is invalid.  Yamaha-USA need not respond
further to request 37.

     18.  REQUEST 39

     Request 39 asks for documents regarding certain
specifications of the YTM.  Yamaha-USA stated that it did not
have that information in its possession, custody or control
unless it is contained in test reports given to plaintiff's
counsel in prior litigation.  This response is sufficient,
because plaintiff will receive the test reports as a result of
this motion to compel.  Yamaha-USA need not respond to request
39.

     19.  REQUEST 49

     Request 49 asks for a copy of Yamaha-USA's articles of
incorporation.  Yamaha-USA objects to that request because the
requested information is of public record.  Documents of public
record equally accessible to both parties are not subject to
discovery.  Dushkin Pub. Group, Inc. v. Kinko's Service Corp.,
136 F.R.D. 334, 335 (D.D.C. 1991) (quoting S.E.C. v. Samuel H.
Sloan & Co., 369 F.Supp. 994, 995 (S.D.N.Y. 1973) (citation to
authorities omitted)).  Plaintiff failed to demonstrate that the
articles of incorporation are not equally accessible to them as

they are to Yamaha-USA.  Thus, Yamaha-USA need not respond
further to request 49.

    20.  INTERROGATORY 2

    Yamaha-USA answered interrogatory 2 with a couple of
unsupported or clarified general objections and the statement
that it cannot give an "accurate" answer.  The general objections
are impermissible.  Moreover, Yamaha-USA should give an answer to
the best of its ability even if "inaccurate" as long as plaintiff
knows that it is inaccurate.  Yamaha-USA's answer to
interrogatory 2 is nonresponsive, thus it should answer
interrogatory 2 fully.

    21.  INTERROGATORY 3

    Interrogatory 3 asks for a list of items withheld from
production because of attorney-client privilege and/or work
product doctrine.  Yamaha-USA objects to this interrogatory on
the unsupported or clarified general grounds of irrelevancy and
undue burden, and as a violation of attorney-client privilege and
work product doctrine.  The irrelevancy and undue burden
objections are impermissible.

    The burden of showing attorney-client privilege lies with
the party asserting it.  See, e.g., In re A.H. Robins Co., Inc.,
107 F.R.D. 2, 8 (D. Kan. 1985).  In this case, Yamaha-USA claims
that a list of privileged documents would amount to an attorney-
client privilege violation, because inferences regarding strategy
could be drawn from the list.  Yamaha-USA fails to supply enough
detail to demonstrate how the inferences would constitute

privileged information.  Consequently, Yamaha-USA has not carried its burden of showing a violation of the attorney-client privilege.

In order for an attorney's materials to be protected by the work product doctrine under Fed. R. Civ. P. 26(b)(3), the party opposing discovery must show that the materials at issue were prepared in anticipation of litigation or for trial.  **Id.** Yamaha-USA has not demonstrated exactly which of the listed documents were made in anticipation of litigation.  Yamaha-USA, thus, has not shown that the work product doctrine applies.  For the above reasons, Yamaha-USA must answer interrogatory 3.

22.   INTERROGATORY 14.

Yamaha-USA answered interrogatory 14 by propounding unsupported or clarified objections based on vagueness, indefiniteness, and irrelevancy.  Yamaha-USA then maintains that the interrogatory is unduly burdensome, because the information sought is not in the format requested.  The vagueness, indefiniteness, and irrelevancy objections are impermissible. Moreover, Yamaha-USA does not explain how the need for the requested information outweighs the burden of gathering it. Furthermore, an interrogatory requiring a compilation, investigation, or research to produce an answer is appropriate where the responding party has control over the information sought or would gather it for his or her own preparation of the case.  See Flour Mills of America, Inc. v. Pace, 75 F.R.D. 676, 680 (E.D. Okla. 1977); King v. Georgia Power Co., 50 F.R.D. 134,

138 (N.D. Ga. 1970). Yamaha-USA does not argue that it has no control over the information requested or that it would not gather it for its own preparation of the case. Accordingly, Yamaha-USA must answer interrogatory 14.

23. INTERROGATORY 16

Yamaha-USA objects to interrogatory 16 on the bases of vagueness, over broadness, and irrelevancy. Yamaha-USA then answers the interrogatory with respect to only three-wheeled ATV's without waiver of the objections. The form of Yamaha-USA's answer results in a waiver of the vagueness, over broadness, and irrelevancy objections. Yamaha-USA's limitation of its answer to three-wheeled ATV's is inappropriate in light of the fact that four-wheeled ATV's are relevant to this case. Yamaha-USA must answer the interrogatory's request for information on four-wheeled ATV's.

24. INTERROGATORY 21(b)

Yamaha-USA's answer is conditional on not being burdensome, states several unsupported or clarified objections, and is limited to three-wheeled ATV's. Conditional answers and unsupported or clarified objections are impermissible. The scope of discovery includes four-wheeled ATV's as discussed, supra. Thus, Yamaha-USA is required to answer fully interrogatory 21(b).

25. INTERROGATORIES 21(c) and 21(f)

Interrogatories 21(c) and (f) ask for information regarding Yamaha ATV sales in New Mexico. Yamaha-USA notes in its Memorandum in Opposition to Plaintiff's Motion to Compel

16

Directed to Yamaha Motor Corp., U.S.A. at 17 that the ATV in question was actually sold in Texas.  The Court finds it difficult to see how New Mexico sales would be relevant to an ATV purchased in Texas.  Yamaha-USA need not answer interrogatories 21(c) and (f).

III.  <u>SANCTIONS</u>

In a number of instances, Yamaha-USA gave evasive or conclusory responses or made meritless objections to the discovery being sought.  While I am limiting sanctions to an award of reasonable attorney fees in connection with the instant motion to compel, I wish to caution counsel for the parties with respect to using oppressive or delaying tactics in the discovery process.  Such practice on either side will not be tolerated.  I find that reasonable attorney fees in the amount of $500.00 should be assessed against defendant Yamaha-USA.

WHEREFORE,

IT IS ORDERED that Yamaha-USA respond to requests for production 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 23, 24, 25, 26, 27, 28, 30, 31, 32, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 50, 51, 52, 53, 54, 56, and 57 of Plaintiff's First Request for Production to Yamaha-USA, and interrogatories 2, 3, 14, 16, 17, 18, 21(b), and 21(g) of Plaintiff's First Set of Written Interrogatories to Yamaha-USA by December 9, 1991.

IT IS FURTHER ORDERED that on or before November 22, 1991, Yamaha-USA pay to plaintiff's counsel the sum of $500.00 for

attorney fees in connection with Plaintiff's First Motion to Compel.

William W. Deaton
UNITED STATES MAGISTRATE JUDGE