UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

```
FILED
UNITED STATES DISTRICT COURT
    DISTRICT OF NEW MEXICO

96 SEP 11 PM 2:20

    Robert M. Marsh
    CLERK-ALBUQUERQUE
```

```
------------------------------------x
CARL WILSON, an individual, and     :
AUDREE WILSON, an individual,
                                    :
                Plaintiff,          :
                                    :   94 Civ. 892 (JC)
        v.                          :
                                    :
HARPERCOLLINS PUBLISHERS INC.,      :
a Delaware corporation,             :
                                    :
                Defendant.          :
------------------------------------x
```

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Defendant HarperCollins Publishers Inc. submits this reply memorandum in further support of its motion, pursuant to Fed. R. Civ. P. 26(b), 33, 34 and 37, to compel Plaintiffs Carl Wilson and Audree Wilson to respond to HarperCollins' First Sets of Interrogatories and Requests for Production of Documents and for sanctions for their failure properly to respond.

### PRELIMINARY STATEMENT

Plaintiffs' responsive brief, which is styled "Consolidated Responsive Brief to Defendant's Consolidated Motion to Compel," is as evasive of the points raised in HarperCollins' opening brief as their discovery responses are of the requests. Indeed, on virtually every issue, plaintiffs respond to arguments of their own making, leaving virtually untouched the arguments made by HarperCollins in its opening brief.

HarperCollins thus reiterates its request that this Court enter an order compelling plaintiffs immediately to provide full, nonevasive responses to the interrogatories and document requests and for

114

sanctions for all of the reasons stated in its opening brief.  In addition, HarperCollins now asks the Court to dismiss Mr. Wilson's claim for "special damages" in the form of lost merchandizing, recording and sponsorship licensing revenue as a result of his flagrant failure to produce any documentation in support of those claims.

HarperCollins' reply to plaintiffs brief is set forth below.

ARGUMENT

1.  <u>Number of Interrogatories</u>:  Plaintiffs do not contend that they failed to answer any particular interrogatory because it exceeded the number allowed under the local rules.  Nor do plaintiffs specify at what point the interrogatories exceeded the allowed number.  In fact, HarperCollins did not exceed the maximum number of interrogatories allowed under the local rules; it merely asked plaintiffs to respond to certain interrogatories for each of the statements in the book they allege to be defamatory.

2.  <u>Injury To Reputation</u>:  At the very first conference in this case this Court asked plaintiffs to articulate their theories on damages and advised them that they were obligated to formulate those theories promptly.  That plaintiffs still have not done so two years later is inexcusable.

Plaintiffs continue to seek to avoid meaningful response to Interrogatory No. 1 by the suggestion that they "interpret[ed] [it] as asking for a list of the names of persons who read the book."  Responsive Br. at 2.  It is plain that this is not what the interrogatory requests.  The interrogatory requests plaintiffs to "[i]dentify each person who has formed a diminished opinion of [them]

2

as a result of the publication of one or more of the allegedly defamatory passages from the book . . . ."  This is the essence of a damage claim in a defamation case.

However, if it is in fact true, as plaintiffs assert on page 3 of their responsive brief, that "there is no further substantive information to provide" in response to Interrogatory No. 1, then a definitive and final response to that interrogatory should be compelled from both plaintiffs and they should be precluded from relying at trial upon testimony from or concerning persons not heretofore identified who later may be claimed to have formed a diminished opinion of plaintiffs as a result of the book.[1]

Plaintiffs fail altogether to respond to HarperCollins argument concerning Document Request No. 26, which requests documents on reputational injury.  Thus, they should also be precluded from relying upon any such documents at trial.

3.  Proximate Cause and Damages.

Plaintiffs' theoretical discussion of actual injury and compensatory damages under Gertz v. Welch, 418 U.S. 323 (1974), Marchiando v. Brown, 98 N.M. 394 (1982) and New Mexico's Uniform Jury

---

1.  We do not know what plaintiffs mean by stating that they have "produced their current phone books, which arguably identify persons who logic suggests have knowledge on the subject of their reputation."  Responsive Br. at 3.  But, it certainly is not responsive to Interrogatory No. 1.  We also do not understand the statement that "Plaintiffs have done additional research and identify Lynn Van Matre as an additional witness on the subject of actual injury and proximate cause."  Responsive Br. at 3.  Does this mean that this person is someone who has formed a diminished opinion of Mr. Wilson or not?  As with so many of plaintiffs' responses, HarperCollins is left to guess.

Instructions, Responsive Br. at 3-5, has nothing to do with the discovery issues before this Court.[2]

The interrogatories on proximate cause and damages are very straightforward.  They ask plaintiffs to state the basis for the allegations in the Second Amended Complaint that the book proximately caused injury and damages to them and to identify all the evidence and persons with knowledge concerning those allegations.  If the correct response is that the sole basis for and evidence of the allegations as to proximate cause and damages are the statements themselves -- which appears to be what plaintiffs are saying -- then that is the answer that should be compelled.

Clearly, however, if there are "associates, friends or family members who can attest to emotional distress or attest to reputation," Responsive Br. at 6, HarperCollins is entitled to know who they are and whether their testimony forms the basis for plaintiffs' allegations on proximate cause and damages.  Further, if the testimony of such persons is going to form the basis for "possible . . . reports of Plaintiffs' Phase II experts" on the subject of damages, Responsive Br. at 6, then there is absolutely no justification for failing to identify them now as their identification was clearly called for in Interrogatory No. 6 to Audree Wilson and Interrogatory Nos. 8 and 9 to Carl Wilson.

As plaintiffs state that they "do not have any documents to show general damages," Responsive Br. at 6, they should be precluded from

_____

2.  HarperCollins will reserve comment upon plaintiffs' interpretation of the law concerning actual and compensatory damages until an appropriate, later date.

relying upon any such documents at trial.  Likewise, they should also be precluded from using any such documents for the purpose of compiling expert reports on general damages.

    4.  <u>Privacy Objections</u>.  As stated in HarperCollins' opening brief, plaintiffs have placed their reputations, the veracity of statements about their private lives and their emotional and financial well-being directly at issue in this case.  They cannot now attempt to thwart discovery on these very subjects by asserting a privacy interest.  HarperCollins does not disagree, in principle, with the notion that the Court must weigh HarperCollins' need for the requested information to adequately defend itself against plaintiffs' claims against plaintiffs' legitimate interests in privacy.  However, privacy interests are attenuated, at best, where a party puts his or her reputation, financial status and emotional state in direct issue in a defamation case.  Plaintiffs have no legitimate interest in keeping "private" the very matters that they themselves have placed at issue in this case.[3]

    We have no idea what plaintiffs mean when they say that they "have complied with what is arguably their minimal obligations to

_____

[3]  Plaintiffs' reliance upon case law purporting to support their privilege objections is extremely misleading.  <u>See</u> <u>Williams</u> v. <u>District Court</u>, 866 P.2d 908 (Colo. 1993)(deals with privacy interests of <u>third parties</u>); <u>Blake</u> v. <u>Blake</u>, 102 N.M. 354, 695 P.2d 838 (Ct. App. 1985)(privacy interests of third parties may be considered but information regarding litigant's earnings and earning capacity <u>is discoverable</u>); <u>Rifkind</u> v. <u>Superior Court</u>, 177 Cal. Rptr. 82 (Ct. App. 1981) (disclosure of third party's business affairs is not prohibited but requires balancing test); <u>Denver Post Corp.</u> v. <u>University of Colorado</u>, 739 P.2d 874 (Colo. Ct. App. 1987)(<u>allowed</u> disclosure of personal personnel files protected under the applicable privacy statute); <u>Garstang</u> v. <u>Superior Court</u>, 46 Cal. Rptr. 2d 84 (Ct. App. 1995)(denied libel <u>plaintiff</u> access to mediation communications under a qualified privilege theory).

identify their physicians."  Responsive Br. at 9.   Interrogatory No. 2 asks for the identification of "each <u>healthcare provider</u> who has treated or otherwise cared" for plaintiffs from 1940 to the present. Document Request Nos. 1 through 4 seek production of healthcare records for the same time period.  The term "healthcare provider" is defined in the interrogatories and requests as "any hospital, residential treatment facility, drug or alcohol rehabilitation facility or service, nurse, nurse practitioner, herbalist, physician, counselor, psychologist, psychiatrist, or any other care giver, whether licensed by the state or not."  There is no principled reason for plaintiffs to respond to the interrogatories and requests with respect to physicians and refuse to respond with respect to counselors, psychologists, psychiatrists, nurses, etc.  Clearly, these nonphysician healthcare providers may have relevant information concerning plaintiffs' emotional and physical histories as well as the veracity of the statements in the book concerning substance, physical and psychological abuse.

Similarly, there is also no principled reason to limit the scope of Interrogatory No. 2 and Document Requests 1 through 4 "to the period of time depicted in the allegedly defamatory statements (Brian Wilson's childhood)."  Responsive Br. at 10.  First, the statements alleged to defame Carl Wilson are not limited to Brian Wilson's childhood.[4]

---

4.  They include statements that Carl was involved in the purchase of heroin in the 1970s, objected to the cost of Brian's psychiatric treatment in the 1980's, delayed in getting psychiatric help for Dennis Wilson in 1983, consulted with others before making decisions at unspecified times in his life, threw his weight into the war
(continued...)

Second, HarperCollins is entitled to a full picture of both plaintiffs' emotional and physical histories to adequately defend itself against their allegations that they have "suffered shame, mortification, personal humiliation, mental anguish and emotional distress, all to [their] general damage in the amount of [Fifteen] Million Dollars," Second Amended Complaint ¶¶ 16, 25, 37, as a result of the publication of this book.  See, e.g., Williams v. District Court, 866 P.2d at 912 ("a defendant in a defamation action may present any evidence which tends to mitigate damages.").  Causes for their mental suffering other than the publication of the book are clearly relevant.

With respect to the assertion that "Plaintiff Carl Wilson stated that none of the medical treatment he received was for drug use (one subject of the defamatory statements)," Responsive Br. at 9, HarperCollins has no obligation to take his word for it and is certainly entitled to review the records for itself.  Moreover, medical and psychiatric treatment he received for other conditions could have direct relevance as to whether the "emotional distress" he claims to be suffering was caused by the book as opposed to something else.

With respect to the interrogatories and document requests that seek information concerning Audree Wilson's use or abuse of alcohol or lack thereof, HarperCollins has already given three reasons why such

---

4.   (...continued)
against Eugene Landy in 1986 by withholding Brian Wilson's pay checks, caused charges to be filed against Carolyn Williams in 1984, was still "drinking heavily" in the late 1980s and was callous toward Brian at various times throughout their adult life.

information is relevant: (i) it may lead to admissible evidence concerning Ms. Wilson's ability to accurately recall the episodes of abuse reported in the book, (ii) it may provide an explanation for her behavior in standing by while her husband abused their children, (iii) it may lead to admissible evidence concerning potential sources for her alleged emotional distress other than the publication of the book. Opening Br. at 15.  Plaintiffs ignore these reasons altogether but do offer a fourth rationale for relevance:  it may lead to admissible evidence concerning Ms. Wilson's reputation prior to the publication of the book.  Responsive Br. at 10.  Plaintiffs fail to explain why there is an inconsistency between the rationale they offer (or the additional rationales) and the Court's prior ruling that the statements in the book about Audree's drinking are not actionable. There is no inconsistency.

Plaintiffs neglect to justify the privacy objection with respect to Interrogatory Nos. 12, 15 and 16 to Audree Wilson, Interrogatory Nos. 10 and 16 to Carl Wilson and Document Request Nos. 5, 6, 7, 8, 21, 23, 24 and 26.  Thus they should be compelled to provide complete and responsive answers.

5.   <u>Financial Records</u>.

<u>Audree Wilson</u>:  As stated in HarperCollins' opening brief, if Audree Wilson is not claiming that the publication of the book caused any change in her financial status, then HarperCollins is entitled to that response to Interrogatory Nos. 12 and 16 and Document Request No. 9 because it constitutes circumstantial evidence that her reputation has not been damaged.  Opening Br. at 10.  Plaintiffs fail to address this point.

8

Plaintiffs also fail to address the other arguments presented in HarperCollins' opening brief as to why the requests for information concerning Audree Wilson's finances are relevant even if she is not claiming that the publication of the book caused a change in her financial status -- namely, (i) that evidence that her financial situation has been enhanced since the publication of the book is substantial evidence that the book had no significant impact upon her reputation; and (ii) information concerning her financial affairs is relevant because it could lead to admissible evidence concerning causes for her alleged "emotional distress" other than the publication of the book.  Opening Br. at 10.  Accordingly, responses should be compelled whether or not Ms. Wilson's tax returns might have been "privileged" in circumstances (other than those presented here) had she filed her case in California state court.

<u>Carl Wilson</u>:  Carl Wilson is claiming a diminution in personal income as a result of the publication of the book.  Thus, to the extent that information concerning his personal income was ever privileged, that privilege has clearly been waived.  HarperCollins is entitled to examine Mr. Wilson's total financial picture to determine whether there is any merit to his claim that his income has diminished as a result of the publication of this book.  For example, examination of Mr. Wilson's financial records might reveal that he has merely allocated income and money making efforts differently in certain areas after October, 1991 than he did prior to that time.

With respect to plaintiffs' assertion that "[t]he only financial information genuinely at issue is information directly relating to Carl Wilson's claim for special damages -- his share of losses in

Beach Boys' merchandizing, touring and recording revenues," Responsive Br. at 12, HarperCollins reiterates that it has been not been provided with any information or documents concerning merchandizing, recording and licensing revenues.[5]

In this vein, plaintiffs have indicated that a document concerning merchandizing, touring, recording and licensing revenue was "specially prepared for counsel's trial preparation (as opposed to raw, original documentation)." Responsive Br. at 14; Exhibit 4 to Responsive Br. ¶ 3. This is plain evidence that the requested documentation is available and within Mr. Wilson's control.

Mr. Wilson's conduct in failing to produce documents concerning his claims for lost merchandizing, recording and licensing revenues is inexcusable, whether or not his counsel believes that "more reliable discovery can be had" through a third party subpoena to Brother Records, Inc. and Brother Tours, Inc. Responsive Br. at 13. Mr. Wilson is one of the primary shareholders of Brother Records and Brother Tours. If he had authority to provide information concerning merchandizing, recording and licensing revenues to his own counsel so she could draft his response to Interrogatory No. 13 (See Attachment I to HarperCollins' Motion to Compel and for Sanctions), he certainly has authority to produce that information to HarperCollins. An appropriate sanction for his failure to do so would be to dismiss his

---

5.  The only information concerning tour revenues that has been provided are the "gig sheets" for 1988 through 1995. Such information was requested for the period 1980 to the present to obtain a historically relevant base to enable HarperCollins to determine whether changes in Beach Boys revenues in 1991 are consistent with a previous pattern. In HarperCollins' view, three years (i.e. 1988) of data is clearly insufficient to make this assessment.

claims for damages in the form of lost merchandizing, recording, and "sponsorship licensing" revenues.  In addition, Mr. Wilson should be compelled to produce information concerning touring revenues from 1980-1988.

6.  <u>Waiver of Privilege</u>:  Plaintiffs admit that they have refused to provide a privilege log of the documents that mention HarperCollins other than those listed on the privilege log in Phase I on the grounds that producing such a log for the Phase II documents that mention HarperCollins (which plaintiffs admit exist) would be "unduly burdensome."  Under the law set forth in HarperCollins' opening brief, this subjects plaintiffs to sanctions under Rule 37(b)(2) and can result a waiver of the privilege.  Opening Br. 15-17.

7.  <u>Evasive Answers</u>:  Section III of HarperCollins opening brief is not a "request for supplementation," as it is characterized by plaintiffs.  Responsive Br. at 16.  That section quite clearly asserts that plaintiffs' responses to the enumerated interrogatories and document requests are purposefully evasive and asks that the Court compel plaintiffs "to provide complete responses to the interrogatories and produce documents responsive to the document requests as written -- not as misinterpreted by plaintiffs."  Opening Br. 11-12.  Complete responses to the enumerated interrogatories and document requests have <u>not</u> been provided.

8.  <u>Waiver of Objections</u>:  The subject of whether plaintiffs' responses to the interrogatories and documents requests enumerated in Section IV of HarperCollins' opening brief were complete (notwithstanding the objections) or partial (as provided in Fed. R. Civ. P. 33(b)(1)) was expressly discussed during the meet and confer.

11

At that time, Ms. Dumas represented that these responses were <u>not</u> partial responses. <u>See</u> Letter dated August 8, 1996 from Katherine Daniels to Beth Dumas at page 2, first full paragraph. (Attachment G to HarperCollins Motion To Compel Discovery And For Sanctions). Plaintiffs are now making the opposite representation to this Court. They cannot have it both ways.

In any event, plaintiffs do not specify what portions of the interrogatories they have not answered and have thus waived the objections.

9. <u>Broad, Conclusory Objections</u>.

Plaintiffs admit that they explained the basis for their objections only with respect to Interrogatory Nos. 8 and 17 to Audree Wilson and Interrogatory No. 18 to Carl Wilson. They should be compelled to do the same with respect to the remaining interrogatories and document requests enumerated in Section V of HarperCollins' opening brief. Alternatively, they should be compelled to provide complete and responsive answers.

CONCLUSION

For the reasons set forth herein and in HarperCollins' opening Memorandum in Support of Its Motion to Compel Discovery and For Sanctions, HarperCollins requests that this Court enter an Order compelling plaintiffs Carl and Audree Wilson immediately to provide full, nonevasive responses to HarperCollins first sets of interrogatories and document requests and ordering plaintiffs, or their counsel, or both, to pay HarperCollins' reasonable expenses, including attorney's fees, caused by the failure to provide such responses in the first instance. In addition, HarperCollins requests

12

that the Court enter an Order dismissing Mr. Wilson's claims for damages in the form of lost merchandizing and recording revenues due to his inexcusable failure to produce any documents concerning these claims.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: _William S. Dixon_ /A
     William S. Dixon
     Post Office Box 1888
     Albuquerque, New Mexico  87103
     Telephone:  (505) 765-5900

R. Bruce Rich
Katherine J. Daniels
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, New York  10153
Telephone (212) 310-8000

Attorneys for Defendant
HarperCollins Publishers Inc.

13

We hereby certify that a copy of
the foregoing was delivered
to Ernesto Romero and Beth Dumas by
facsimile and overnight mail
this 9th day of September, 1996,
at the following addresses:

      Ernesto J. Romero
      3602 Campus Blvd., N.E.
      Albuquerque, NM  87106

      Beth F. Dumas
      Langberg Cohn & Drooz
      12100 Wilshire Boulevard
      Suite 1650
      Los Angeles, California  90025

WEIL, GOTSHAL & MANGES

By:  _Katherine Daniels_
     Katherine J. Daniels

14