IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, and
AUDREE WILSON, an individual,

        Plaintiffs,

v.

HARPERCOLLINS PUBLISHERS INC.,
a Delaware Corporation,

        Defendant.

No. CIV 94-892 JC/LFG

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR PRECLUSION ORDER UNDER 37(c)(1) FOR FAILURE TO COMPLY WITH RULE 26(a)(2) CONCERNING DISCLOSURE OF EXPERT REPORTS

In their response to defendant's motion to exclude the expert testimony of Lashner, Kaplan, and Fey plaintiffs fail to address, or admit by their silence, their material noncompliance with Rule 26(a)(2). Instead, plaintiffs treat Rule 26(a)(2) as if it were a precatory suggestion to be ignored at the convenience of the parties and then taken seriously only when sanctions are threatened. By failing to contest the statements made in defendant's brief-in-chief and by seeking to supplement their grossly inadequate reports, plaintiffs have admitted that the original reports materially failed to comply with Rule 26(a)(2).

Moreover, plaintiffs fail to offer any justification for their failure to submit reports in compliance with Rule 26(a)(2). Nowhere in the response is there a serious attempt to explain, excuse, or justify the failure to provide the information required by Rule 26(a)(2). Rule 26(a)(2) however, is not some arcane procedural requirement whose contours are ambiguous and unclear. It specifically sets forth the information to be included in an expert report, virtually none of which was provided in the original submissions and most of which remains



absent from the plaintiffs' attempts to supplement. Yet plaintiffs offer no reason why Lashner's data was not submitted earlier, why Kaplan's report included only part of his opinion and none of the supporting data, why Kaplan was never shown the records which he claimed to need to render his opinion (records in the sole and exclusive possession of businesses, Brothers Records and Brothers Tours, in which plaintiff Carl Wilson was a shareholder), why Lashner, Kaplan and Fey failed to provide the specific information on compensation and testimonial background, and why Fey's declaration was utterly bereft of supporting data.

Plaintiffs' breach of Rule 26(a)(2) has caused the very prejudice which the report requirements of the 1993 amendments were designed to eliminate. Defendant's own expert reports are due on January 17, 1997. Plaintiffs' initial and continued failure to provide the required information has interfered significantly with the preparation of its own witness reports. The failure to comply with Rule 26(a)(2) leaves defendant uncertain of the scope and nature of the opinions offered, deprives its own experts of the underlying data on which the opinion is based, and places defendant in the disadvantageous position of responding to inchoate opinions supported by only fragmentary data. The substantial deficiencies of the original (and the supplemental) should require preclusion of expert testimony.

Lashner Report

The initial submission by Dr. Lashner was admittedly devoid of the supporting data required under Rule 26(a)(2), the pertinent information concerning fees, and the relevant background testimonial information. In the subsequent submissions, Lashner now claims to have provided the omitted information, yet plaintiffs offer no justification, much less

2

substantial justification, for their failure to provide the information by November 15, 1996, when it was due.

Moreover, Lashner's statement of testimonial background in her original and supplemental submission raises a serious issue of misleading the court and counsel. Lashner's affidavit represents that she has testified "in courts in Houston, Texas and Denver, Colorado" as well as having given "depositions and submitted" affidavits in various other contested matters" in several states, thus creating the distinct impression of general judicial acceptance. See Lashner Affidavit, para. 26. But defendant's data base search of Lashner's name has produced a shockingly different picture of judicial acceptance of Dr. Lashner's testimony.  In Tilton v. Capital Cities/ABC Inc 938 F. Supp. 751 (N.D. Okla. 1995), aff'd, 95 F.3d 32 (10th Cir. 1996); World Boxing Council v. Cosell, 715 F. Supp. 1259 (S.D.N.Y. 1989); Brueggemeyer v. American Broadcasting Cos., 684 F. Supp. 452, 464 (N.D. Tex. 1988); and Fish v. Heatherdowns Country Club Ass'n, 1991 WL 97324 *4 (Ohio. Ct. App. 1991); the courts rejected her claimed expertise and proffered testimony as pseudo-scientific, invasive of the proper role of the court and jury, and likely to result in confusion and prejudice.

Plaintiff suggests that Daubert and admissibility issues will be considered in a separate motion to be filed by defendant. While defendant agrees that the Daubert and admissibility issues should be deferred until the briefing on its motion to exclude is completed[1], the

---

1.  Contrary to plaintiffs' suggestion, the Daubert issue was raised in the initial brief, not to obtain a ruling on admissibility or to add "color" but rather to alert the court to it at the earliest possible time.  Under the prevailing case law a party opposing testimony must bring a potential Daubert problem to the attention of the court to allow hearings to be conducted well in advance of trial.

(continued...)

inadequacy of the disclosures and the misleading nature of her statement of testimonial background directly relates to compliance with Rule 26(a)(2). An expert seeking to give complete and accurate information about prior testimony would not imply wholesale judicial acceptance of her expertise without mentioning four published opinions (one within the last four years) which have excluded her testimony in libel cases. The Court should consider this artifice in ruling on the appropriate sanction for Lashner's failure to comply with Rule 26(a)(2).

Kaplan Report

Plaintiffs attempt to sidestep the numerous cited deficiencies in Kaplan's "report" (see Br. at 6-8) by misleadingly stating that "the deficiency asserted by Defendant is that the accounting records [Mr. Kaplan] relied on were not attached to his declaration." Plaintiff's Br. 3. They then assert that this deficiency has somehow been "cured" by the submission of a second declaration on December 11, 1996 in response to HarperCollins' motion to preclude and for sanctions.

Once again, neither plaintiffs nor Mr. Kaplan offer any justification -- let alone a "substantial justification," as is required by Rule 37(c)(1) -- for failing to comply with Rule 26(a)(2)(B) in the first submission. Indeed, Mr. Kaplan states that he has been the accountant for the Beach Boys corporations, Brother Records and Brother Tours, since January 1994. As such, he had access to the data on Beach Boys touring and merchandising revenues long

---

1. (...continued)
McKnight v. Johnson Controls, Inc., 36 F.3rd 1396 (8th Cir. 1994); Robinson v. Missouri Pacific R. Co. 16 F.3d 1083 (10th Cir. 1994)

4

before November 15, 1996, when plaintiffs' expert reports became due. In short, there is no justification for Mr. Kaplan's failure to submit a complete report on November 15, 1996. Plaintiffs either purposefully evaded the requirements of Rule 26(a)(2)(B) or exercised inexcusable negligence in submitting Mr. Kaplan's initial declaration. Rule 37(c)(1) was expressly designed to sanction such conduct by precluding the recalcitrant party from using "as evidence at a trial, at a hearing, or on a motion any witness or information" that was not disclosed.

Even if plaintiffs had been able to offer a "substantial justification" for their failure to comply with Rule 26(a)(2)(B) on November 15th, Mr. Kaplan's December 11th "declaration" still fails to comply with the Rules on expert disclosures and should be precluded for the following reasons:

First, Mr. Kaplan's new declaration goes far beyond the type of "supplementation" that is contemplated by Rule 26(e)(1). For example, Mr. Kaplan's new declaration makes assertions concerning an alleged decline in "merchandising revenues," yet, the topic of merchandising revenue was not even mentioned in Mr. Kaplan's original submission. In addition, Exhibit 5 to Mr. Kaplan's new declaration contains documents regarding merchandising revenue which were never even produced to HarperCollins in discovery -- notwithstanding the fact that they are clearly responsive to Request No. 9 of HarperCollins First Set of Requests for the Production of Documents (which was served in June, 1996), as well as Request No. 13 of the Subpoena Duces Tecum HarperCollins served on Brother Records and Brother Tours (corporations in which plaintiff Carl Wilson is an officer and principal shareholder) in September. Plaintiffs' belated use of these documents in Mr.

5

Kaplan's untimely amended declaration is inexcusable.  It is, however, wholly consistent with their attitude toward discovery obligations throughout this litigation.

Second, Mr. Kaplan's revised declaration contains new "schedules" (Exhibits 2, 3 and 4) which purport to "summarize" his analysis of the alleged decrease in touring and merchandizing revenues since 1991.  Plaintiffs do not explain why Mr. Kaplan's original declaration failed to disclose <u>any</u> of the data that he "summarizes" on these schedules, even though that data was clearly available to Mr. Kaplan long before his report became due on November 15th.  This simply is not the inadvertent type of omission that parties should be allowed to "cure" through supplementation.  It reflects a purposeful and persistent effort on the part of the plaintiffs to resist meaningful discovery on damages.

Third, Mr. Kaplan's supplemental declaration still fails to comply with Rule 26(a)(2)(B) because it neglects to disclose the bases for his conclusions.  For example, Mr. Kaplan fails to disclose how he "computed [the] show per year averages and revenue per show averages" from the handwritten "gig sheets" on which he claims to rely.  Thus, HarperCollins is left completely in the dark as to whether Mr. Kaplan based his analysis on the "contract price," the "total due," the "total received" or some other number or combination of numbers reflected on the "gig sheets."  This is no small or "inadvertent" omission given that the "gig sheets" contain thousands of individual handwritten entries over a thirteen year period and do not even reflect annual totals.  It is extraordinarily difficult, if not impossible, for HarperCollins' financial expert to comment, in any meaningful way, upon the validity and accuracy Mr. Kaplan's analysis if forced to make guesses about what Mr. Kaplan may or may not have done.  Rule 26(a)(2)(B) expressly required Mr. Kaplan to provide this

6

information.  The fact that he has not has prejudiced HarperCollins in its ability to provide a meaningful response.

Fourth, Mr. Kaplan fails to disclose his reason for excluding certain data from his analysis.  For example, the "explanation" sections of his Exhibits 2, 3 and 4 indicate that certain foreign tours and benefit concerts were excluded from the calculations.  Why?  To what effect?  He never explains.  One also wonders what justification Mr. Kaplan might have for focusing his analysis on "gross" revenues when "net" revenues typically form the basis for lost earnings calculations.  No reason is supplied.

Fifth, Mr. Kaplan fails to give any indication as to how his analysis is relevant to Carl Wilson's claims for "special damages."  For example, is it Mr. Kaplan's opinion that the cited decline in gross touring and merchandizing revenues was caused solely by the publication of the book as opposed to any number of factors which could influence the number of shows the group performed in a given year?  Once again, Mr. Kaplan's amended declaration is silent on this issue.  He is likewise silent on whether it is his opinion that Mr. Wilson is entitled to recover the entire amount Mr. Kaplan asserts has been "lost" by the group as a whole.  If so, Mr. Kaplan neglects to explain how it is that Brother Records and Brother Tours have sued HarperCollins to recover for the very same alleged "lost revenues" in state court in New Hampshire.

Finally, Kaplan again fails to state "the compensation to be paid for the study and testimony."  He provides only his hourly rate, not his total payments for the work performed.

In the event that the Court should decide not to bar entirely Mr. Kaplan's testimony, it should, at a minimum, enter an order precluding the plaintiffs (and Kaplan) from offering any

expert evidence that departs in any way, from the opinions, data, or methodology used in his original report.

In his original report, Kaplan presents an opinion on only one source of lost profits: touring revenue. Kaplan should not be allowed to offer an opinion on any other source of economic damage. Moreover, the court should preclude Kaplan or any other expert from using any data other than that specifically included in the report. If the data chosen is unrepresentative or if it is shown to be unreliable, Kaplan should not be allowed to supplement again or to rely on data not presented in the report. In short, to the extent it rests on data, Kaplan's opinion must be limited to the supporting data provided in the original report, not data yet to be disclosed.

Finally, the court should bar Kaplan or any other expert from using a methodology for calculating lost profits other than the one actually used in the report. Kaplan, for example, used a gross revenue figure to compute damages without deducting expenses. Having adopted this method for calculating damages, the admissibility of his opinion must rest or fall on the methodology chosen, i. e., that lost profits can be calculable without deducting costs.

For all of the reasons stated above, the Court should preclude the admission of any testimony from Mr. Kaplan as a sanction under Rule 37(c)(1) due to the numerous deficiencies in his original and supplemental reports. Alternatively, the Court should enter an order precluding Kaplan or any other plaintiffs' expert (1) from testifying to any opinion on economic damages other than those specifically set forth in his original report, (2) from using or relying on any data not included or attached to that report, and (3) from employing or using any other methodology for calculating damages other than that set forth in his report.

8

Fey Report

The Court should exclude all testimony from expert Fey.  Despite plaintiffs'
acknowledgement that Fey's declaration fails to meet any of the requirements under Rule
26(a)(2) and the concomitant failure to supplement or cure in any way these deficiencies,
plaintiffs argue that these breaches of the rule should be forgiven because Mr. Fey is too busy
to provide additional information or cure the prior deficiencies.  See Dumas Affidavit, para 4
("Mr. Fey's assistant initially advised me that he was unavailable due to concert promotion
business. . ."). But plaintiffs never explain why the Fey report was not completed with the
required information in the first instance or why even a minimal gesture toward compliance
with Rule 26(a)(2) was not made in the original submission. Plaintiffs simply blink the
undeniable facts that they have had over two years within which to identify an expert and
prepare a report and that Fey's submission admittedly fails to comply in any respect with the
requirements of Rule 26(a)(2).

What is particularly disturbing about the Fey declaration is its utter failure to identify
the sources for the information upon which he bases his conclusion of a link between the
book and unpopularity of the Beach Boys' music. Because plaintiffs had identified four disc
jockeys in their answers to interrogatories, and had informed HarperCollins that these names
were supplied by Mr. Fey, HarperCollins presumed that these four were the persons on whom
Fey relied. Defendant has interviewed each person identified in plaintiffs' interrogatory
responses as having knowledge and the results are astonishing.  In each case the disc jockeys
either disclaimed knowledge that the book had been published or denied any awareness that
the Beach Boys music has been adversely affected by the book, and affirmatively stated that

their decisions on whether to play Beach Boys music were based on the format of their music shows and their audience's musical preferences. See Affidavits of David Pratt (Exhibit 1), Jo Meyers (Exhibit 2), Dominic Testa (Exhibit 3), and Paxton Mills (Exhibit 4). Moreover, two of the disc jockeys stated that they first learned that they had been named as witnesses when they were contacted by HarperCollins' representatives seeking information concerning their proposed testimony. To say the least, this conduct by plaintiffs and their expert was not what the framers of the 1993 amendment to Rule 26 had in mind in providing information in expert reports.

The suggestion that defendant forego any report and take Fey's deposition in lieu of the same is both arrogant and unacceptable. Rule 26(a)(2) was designed to provide the essential information concerning the expert's opinion before a deposition in the hope that the deposition, if necessary at all, would be considerably reduced in duration. Plaintiffs are attempting to shift to the defendant the burden and cost of rectifying their own material breach of Rule 26(a)(2), while delaying the submission of this expert's opinion until two months after the initial report was due.

Finally, plaintiffs should not be granted leave to identify yet another expert. The court gave ample opportunity to identify experts, and plaintiffs never filed a motion to extend the time. Even after the deficiencies in the original submission were identified by the defendants, plaintiffs have not provided any additional information to cure. If the court's deadlines are entitled to at least a modicum of respect, the sole remedy for plaintiffs' and Mr. Fey's failure to submit a conforming report is to bar his testimony without leave to designate additional experts to testify on the same issues.

10

Respectfully Submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By: _William S. Dixon_

William S. Dixon
Post Office Box 1888
Albuquerque, New Mexico  87103
Telephone:  (505) 765-5900

R. Bruce Rich
Katherine J. Daniels
Elizabeth Stotland Weiswasser
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone (212) 310-8000

Attorneys for Defendant
HarperCollins Publishers Inc.


We hereby certify that a copy
of the foregoing was mailed to
counsel of record this _20th_
day of December, 1996.

RODEY DICKASON, SLOAN, AKIN & ROBB, P.A.


By _William S. Dixon_

William S. Dixon

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, and
AUDREE WILSON, an individual,

      Plaintiffs,

    v.                          No. CIV 94-892 JC/LFG

HARPERCOLLINS PUBLISHERS, INC.,
a Delaware Corporation,

      Defendant.

## AFFIDAVIT OF DAVID PRATT

STATE OF ARIZONA      )
                       )  ss.
COUNTY OF MARICOPA     )

    I, David Pratt, being first duly sworn upon oath, depose and state as follows:

    1.   I am a disc jockey with KUPD, a radio station in Phoenix and host a show called "Pratt In The Morning" playing contemporary rock and roll.  The style of music which we play are typified by the groups Guns 'N Roses; Metallica; Van Halen; AC/DC.

    2.   I have been a disc jockey for 16 years in Phoenix and do not believe that I have ever played a Beach Boys song on my show.  Although I like Beach Boys music, as a matter of style and format, it simply does not fit into the preferences or tastes of my audience.

    3.   I am completely unaware of the book entitled Wouldn't It Be Nice and have no knowledge that anything in that book has caused a reduction in air time for Beach Boys songs in the Phoenix area.

EXHIBIT

1

4.   My reason for not playing Beach Boys music relates to
the listening preferences and tastes of my audience and has
nothing to do with the publication of any material from a book.

Further affiant sayeth not.

_____
DAVID PRATT

SUBSCRIBED AND SWORN TO before me by David Pratt this 9th

day of December, 1996.

BETTY GRANTHAM
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Mar. 15, 1999

_____
Notary Public

My Commission Expires:

   3-15-99

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, and
AUDREE WILSON, an individual,

      Plaintiffs,

   v.                           No. CIV 94-892 JC/LFG

HARPERCOLLINS PUBLISHERS, INC.,
a Delaware Corporation,

      Defendant.

### AFFIDAVIT OF JO MEYERS

STATE OF COLORADO     )
                          )  ss.
COUNTY OF DENVER      )

    I, Jo Meyers, being first duly sworn upon oath, depose and state as follows:

    1.   I am a disc jockey on KIMN in Denver, Colorado and host a morning radio show playing rock and roll music.  I have been a disc jockey in the Denver area for __13__ years.

    2.   I apparently was listed as a witness by the Plaintiffs in a case brought by some of the Wilson family against HarperCollins.

    3.   I have never read the book Wouldn't It Be Nice and was unaware of it until November , 1996.

    4.   I do not care for Beach Boys music and choose not to play it because it does not fit into the format of my radio show or my audience's tastes.

    5.   I am unaware of any statements from the book Wouldn't It Be Nice that have caused any reduction in air time for Beach Boy music in the Denver, Colorado area.

EXHIBIT

2

FURTHER AFFIANT SAYETH NOT.

_____
JO MEYERS

SUBSCRIBED AND SWORN TO before me by Jo Meyers this _6th_
day of December, 1996.

_____
Notary Public

My Commission Expires:

_5-26-98_____

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, and
AUDREE WILSON, an individual,

       Plaintiffs,

    v.                      No. CIV 94-892 JC/LFG

HARPERCOLLINS PUBLISHERS, INC.,
a Delaware Corporation,

       Defendant.

### AFFIDAVIT OF DOMINIC TESTA

STATE OF COLORADO      )
                      )  ss.
COUNTY OF DENVER      )

    I, Dominic Testa, being first duly sworn upon oath, depose and state as follows:

    1.   I am a disc jockey with KIMN in Denver, Colorado and host a morning rock and roll show. I have been a disc jockey in the Denver area for __10__ years.

    2.   I was apparently listed as a witness by the Plaintiffs in a lawsuit between some of the Wilson family and HarperCollins. I was unaware that I was going to be listed as a witness before representatives of the parties began calling me to find out what I knew.

    3.   Before November, 1996 I was unaware that a book entitled "Wouldn't It Be Nice" had even been written. I have not read the book and am not familiar with its contents.

    4.   I personally do not care for the Beach Boys style of music. Neither the format of my show or the tastes and preferences of my audience are compatible with their style of

EXHIBIT

3

music.  My reason for not playing their music is based on musical taste and my audience's strong preference for contemporary rock and roll.  That is the reason I do not play their music on my show. I have not been influenced in anyway in my choice of songs by any statements about the Beach Boys or their families.

5.    I am unaware of any reduced air play for Beach Boys music in the Denver area.

FURTHER AFFIANT SAYETH NOT.

_____
DOMINIC TESTA


SUBSCRIBED AND SWORN TO before me by Dominic Testa this _6th_ day of December, 1996.

_____
Notary Public

My Commission Expires:

_5-26-98_____

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL WILSON, an individual, and
AUDREE WILSON, an individual,

       Plaintiffs,

  v.

HARPERCOLLINS PUBLISHERS, INC.,
a Delaware Corporation,

       Defendant.

No. CIV 94-892 JC/LFG

### AFFIDAVIT OF PAXTON MILLS

STATE OF COLORADO     )
                  )  ss.
COUNTY OF DENVER      )

    I, Paxton Mills, being first duly sworn upon oath, depose and state as follows:

    1.   I am a disc jockey on KOSI radio in Denver, Colorado and currently host an adult contemporary show.  I have been a disc jockey for 30 years, starting my career with KILF in Dallas. I first moved to Denver in 1969 and subsequently worked as a disc jockey in San Diego, Seattle, Cleveland and Atlanta.  I moved back to Denver in 1980, had a top 40 show at KIMN and then moved on to KOSI where I have worked for five years.

    2.   I have always been a fan of the Beach Boys and their music.  I continue to play their songs on my show and enjoy their style of music.

    3.   I am not aware of any reduction in airplay of Beach Boys songs by any disc jockeys or radio stations since 1991.  I feel free to play their songs, when appropriate for the preferences and tastes of my listening audience.  For example,

**EXHIBIT**

4

while I often play certain kinds of Beach Boys tunes, such as "Cocomo", I do not typically play the "hot-rod" songs because they would not appeal to my audience and would be incompatible with the format of my show.  Based on my knowledge of contemporary music, I do not believe that the Beach Boys music would be compatible with a top 40 format, although radio shows with a different format, such as my own, continue to play them.

4.    The major factor affecting the Beach Boys' popularity is simply that time and changing tastes in popular music has caught up with them.  I have not noticed any change in airplay given the Beach Boys on stations with an "Oldies" format since 1991.

5.    I continue to like the Beach Boys style of music and intend to play it, as appropriate, on my radio show.  I have never read Brian Wilson's autobiography.  Nothing I have heard or learned about his book, however, has dampened my enthusiasm for their music or caused me to reduce airplay for their songs.

FURTHER AFFIANT SAYETH NOT.

_____
PAXTON MILLS

SUBSCRIBED AND SWORN TO before me by Paxton Mills this _17th_ day of December, 1996.

_____
Notary Public

My Commission Expires:
My commission expires March 23, 1997.

2